

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2001

# United States v. Clark

Precedential or Non-Precedential:

Docket 99-5386

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Clark" (2001). *2001 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 10, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-5386

UNITED STATES OF AMERICA,
      Appellee

v.

MARK ANTHONY CLARK,
      Appellant

On Appeal from the United States District Court
for the District of New Jersey
(Crim. No. 98-316)
District Judge: Honorable Garrett E. Br own, Jr.

Submitted Under Third Circuit LAR 34.1(a)
(Argued: February 29, 2000)

Before: ALITO and STAPLETON, Circuit Judges,
and POLLAK,* District Judge

(Filed: January 10, 2001)

        Thomas R. Valen (Argued)
        Gibbons, Del Deo, Dolan,
        Griffinger & Vecchione
        One Riverfront Plaza
        Newark, New Jersey 07102-5497
         Attorneys for Appellant
_____

* Hon. Louis H. Pollak, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

        Vincent Giblin (Argued)
        George S. Leone
        United States Attorneys Office
        970 Broad Street
        Newark, New Jersey 07102-2535
         Attorneys for Appellee

OPINION OF THE COURT

POLLAK, District Judge.

Mark Clark, the appellant, pled guilty to an indictment charging that, in contravention of 21 U.S.C.S 841(a)(1), he possessed with intent to distribute more thanfifty grams of cocaine base ("crack"). As part of the plea agreement, Clark undertook to assist law enforcement officers in their efforts to gather evidence against and prosecute others. In exchange for that undertaking, the government agreed that, if satisfied that Clark's assistance was substantial, it would, at the time of Clark's sentencing, file motions[1] pursuant to U.S.S.G. S 5K1.1 and 18 U.S.C.S 3553(e) authorizing the District Court to impose a sentence lower than the otherwise applicable sentencing guideline range and lower than any otherwise applicable statutory minimum sentence. Clark provided the pr omised assistance. The government filed the pr omised motions. At sentencing it was determined that the guideline offense level was 29 -- signifying a guideline range of 108 to 135

_____

1. The word "motions," in the plural, is employed here to make it clear that the government, in filing what in or dinary practice is a single document enabling a sentencing court to depart downward below both the guideline range and any statutory minimum in recognition of a defendant's cooperation, is as a formal matter to be understood as transmitting to the court two conceptually distinct (albeit integrally related) authorizations/recommendations-- one under U.S.S.G. S 5K1.1 and the other under 18 U.S.C. S 3553(e). This conceptual distinction has important real-world implications, as United States v. Melendez, 518 U.S. 120 (1996), affirming this court's decision, 55 F.3d (3rd Cir. 1995), illustrates: a government motion that invokes U.S.S.G. S 5K1.1, but not 18 U.S.C. S 3553(e), does not authorize a sentencing court to depart downward below the statutory minimum.

2

months -- and that the statutory mandatory minimum was 120 months. The District Court imposed a ter m of incarceration of 90 months.

On appeal Clark contends that the District Court, in calculating an appropriate downward departure, chose as its base line the 120-month statutory minimum rather than the 108-month bottom of the guideline -- a choice resulting in a sentence appreciably longer than it would have been had the District Court calculated the downwar d departure from a base line of 108 months. The methodology adopted by the District Court in calculating the downwar d departure was, so Clark contends, incompatible with the letter and the rationale of the pertinent pr ovisions of Title 18 and of the guidelines.

The government supports the methodology used by the District Court, contending that it was in har mony with (a) the pertinent provisions of Title 18 and of the guidelines and (b) the case law construing those provisions. Further, the government points out that at sentencing Clark interposed no objection to the District Court's methodology and, therefore, so the government ar gues, the methodology is not assailable on appeal unless it is properly characterizable not merely as error but as"plain" error -- and this, the government insists, it assur edly was not. Finally, the government argues that, even supposing there had been plain error, whether the District Court used 120 months or 108 months as its point of departur e made no difference with respect to the sentence actually imposed: as the government reads the recor d at sentencing, the District Court determined that a two-level downwar d departure was appropriate, and, since both 120 months and 108 months fall within offense level 29's guideline range, a two-level downward departure from either 120 months or 108 months would have brought the court to of fense level 27, and a consequent range of 87 to 108 months, within which range the court selected 90 months as the pr oper sentence.

In his reply brief, Clark argues that"plain error" jurisprudence is inapplicable. He contends that the asserted error of the District Court was not one that he can properly be required to have objected to at the sentencing hearing because "the issue . . . did not arise until after the

3

district court had granted the government's[downward departure] motions . . . and imposed sentence."

I. The Proceedings in the District Court

At Clark's sentencing the District Court deter mined that, but for the government's submission of downwar d departure motions under 18 U.S.C. S 3553(e) and U.S.S.G. S 5K1.1, it would have been (1) requir ed by statute (21 U.S.C. S 841(b)(1)(A)(iii)) to impose a ter m of incarceration of at least 120 months, and (2) required by the guidelines applicable to a Criminal History Category III of fender with an offense level of 29 to impose a ter m of incarceration of between 108 and 135 months. In the absence of the government's downward departure motions, compliance with both of these constraints would have meant that the District Court would have been required to sentence Clark to a term of incarceration of between 120 and 135 months. The District Court put it this way:

> All right. The warrants [sic] 2 for the government's downward departure motion, I, of course would be limited to 10 years, make it 120 and 135, because of the government's downward departur e motion, I am not so bound and I can go below the 120 months or I can even go below the level 29.

Immediately thereafter the District Court "committed [Clark] to the custody of the Bureau of Prisons for a term of 90 months." After detailing the other aspects of the sentence (five years of post-custody supervised r elease; $750 fine; $100 special assessment), the District Court advised Clark of his right to appeal, and then said:

> The departure that I had reached is a substantial one. I have gone below the mandatory minimum as stated and in addition, gone up [sic] two levels, at the bottom of that range, approximately to a 90 month instead of 120 months.

Thereafter, following an expression of "hope that the defendant is correct in saying he'll tur n his life around" on release, the court inquired:

_____

2. The phrase "The warrants" was pr esumably an error in transcription.

4

Anything further?

Defense counsel responded:

> Your Honor, will the Court be making a
> recommendation as to Fairton and the drug r esidential
> treatment program?

The court replied: "I said that I would so r ecommend and
I will." After defense counsel said, "Thank you, Judge," the
court inquired again: "Anything further? Government?"
Government counsel said: "Nothing, Y our Honor." The court
then observed: "Okay. I hope Mr. Clark is able to turn his
life around. He certainly has the opportunity to do so." And
the sentencing hearing ended.

## II. The Contentions of the Parties

Clark, in the Summary of Argument in his opening brief
on appeal, outlines his position as follows:

> In contrast to the approach followed by the district
> court, the Sentencing Guidelines provide that the
> granting of a motion under 18 U.S.C S 3553(e)"waives"
> the statutory minimum. Thereafter, sentence must be
> imposed based upon the guideline range without
> reference to that minimum term. Thus, where the
> government has moved for a downward departure
> under U.S.S.G. 5K1.1 in addition to having moved to
> waive a statutory minimum, the starting point for
> calculating the 5K1.1 departure should be the bottom
> of the guideline range. This approach is r equired by the
> relevant statutory and guidelines provisions, by the
> United States Supreme Court's holding in United States
> v. Melendez, 518 U.S. 120 (1996),3  and by the
> structure and goals of the guidelines as expr essed by
> the Sentencing Commission. As the district court
> misapplied the guidelines by calculating the departure
> from the statutory minimum term, the Court should
> remand this case with instructions that the court
> resentence the defendant by calculating the downward

_____

3. As to the holding in Melendez, see footnote 1, supra.

departure under U.S.S.G. S 5K1.1 fr om the applicable guideline range of 108 to 135 months.4

The government's response to Clark's ar guments is two-fold:

First: The government contends that, contrary to Clark's argument, the pertinent statutory and guidelines provisions do not authorize -- much less require-- a sentencing court, when fashioning a downward departur e pursuant to government motions under 18 U.S.C. S 3553(e) and U.S.S.G. S 5K1.1, to "waive" the statutory minimum as the point of departure when that statutory minimum is higher than the bottom of the applicable guideline range but lower than the top of the guideline range. In such a situation -- of which the case at bar, with a statutory minimum of 120 months, and a guideline range of 108 to 135 months, is an example -- the sentencing court is, according to the government, required by U.S.S.G.S 5G.1(c)(2),5 to narrow the guideline range to the segment between the statutory minimum and the top of the guideline range (in the case at bar, 120 to 135 months) and then calculate any downward departure with that narrowed guideline range as its point of departure. The government further contends that its reading of the pertinent statutory and guidelines provisions is consonant with the approach taken in United States v.

_____

4. The argument advanced by Clark is somewhat amplified in footnote 7, infra.

5. U.S.S.G. S 5G1.1. Sentencing on a Single Count of Conviction

     (a) Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.

     (b) Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

     (c) In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence --

     (1) is not greater than the statutorily authorized maximum sentence, and

     (2) is not less than any statutorily requir ed minimum sentence.

6

Hayes, 5 F. 3d 292 (7th Cir. 1993), and followed in United States v. Head, 178 F. 3d 1205 (11th Cir .), reh'g and reh'g en banc denied, ___ F.3d ___ (11th Cir. 1999).

Second: The government contends, in the alternative, that, not having presented to the District Court his objection to the District Court's mode of calculating the downward departure, Clark can only complain on appeal if the District Court's action was "plain err or." Even if the District Court's action be deemed "error"-- which the government denies -- it cannot, in the gover nment's view, be regarded as "plain error." And even a "plain error," the government further contends, is not subject to appellate remediation unless it is one that "must have affected the outcome of the district court proceedings," United States v. Olano, 507 U.S. 725, 734 (1993), which this asserted error -- so the government contends -- has not done.

III. Discussion

Counsel for appellant Clark did not advise the District Court, when the court announced the 90-month sentence, that counsel understood the court to have taken 120 months as the starting point for its downwar d departure calculations and that the proper starting point was 108 months. Rule 52(b) of the Federal Rules of Civil Pr ocedure instructs that: "Plain errors or defects af fecting substantial rights may be noticed although they were not br ought to the attention of the court." But the Supr eme Court has instructed that: "At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." United States v. Olano, 507 U.S. 725, 734 (1993).

Clark contends that "it is clear that the district court plainly misapplied 18 U.S.C. S 3553(e) and the guidelines . . ." However, the clarity contended for by Clark is not reflected in the relevant case law. In 1993, six years before Clark's sentencing, the Seventh Circuit had considered a cognate challenge to a sentencing court's use of the statutory mandatory minimum, rather than the guideline range, as the point of departure for calculation of a downward departure. United States v. Hayes, 5 F.3d 292 (7th Cir. 1993). The circumstances in Hayes's case were

7

much like those in Clark's, except that the gover nment only moved under 18 U.S.C. S 3553(e) —— not under U.S.S.G. S 5K1.1 as well —— and the statutory mandatory minimum of 60 months was higher than the top of the guidelines range. The Seventh Circuit said this:

> After the hearing, the district court granted the government's motion and reduced Hayes' sentence from 60 to 47 months. The court calculated its downward departure by working backwar d from Hayes' 60-month sentence. The court first observed that the lowest United States Sentencing Guidelines (the "Guidelines") offense level for which a 60-month sentence could have been given is 24. Departing downward two levels for Hayes' substantial assistance results in an offense level of 22, which carries a sentencing range of 41 to 51 months. Hayes' 47-month sentence falls within that range. Hayes appeals his reduced sentence, arguing that the method used by the district court to calculate his downward departure violates 18 U.S.C. S 3553(e). . . .

> Hayes argues that when a district court departs below the mandatory minimum sentence pursuant to 18 U.S.C. S 3553(e), the resulting sentence must be within the Guidelines range appropriate for the offense and the offender's criminal history category. Because his original offense level was 16 and his criminal history category is I, Hayes contends that the district court was constrained by the resulting 21 to 27 month range. Hayes bases his argument on the portion of S 3553(e) that states: "Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. S 3553(e) (referring to sentences imposed below the statutory minimum for substantial assistance). Hayes' argument is unavailing, however, because his 47-month sentence was imposed in accordance with the guidelines.

> "Where a statutorily requir ed minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. S 5G1.1(b)

8

(emphasis supplied). Therefore, when the district court originally sentenced Hayes, the statutory mandatory minimum sentence of 60 months became Hayes' Guidelines range, albeit a narrow one. The 21 to 27 range no longer applied. The appropriate starting point for Hayes' downward departure was 60 months, and the district court properly began there.

5 F.3d at 294-95 (footnote omitted).

In June of 1999, a month after Clark was sentenced, the Eleventh Circuit, in United States v. Head , 178 F.3d 1205 (11th Cir. 1999), considered a case closely similar to Hayes -- except that, as in the case at bar, the government filed motions both under 18 U.S.C. S 3553(e) and under U.S.S.G. S 5K1.1 -- and found the Hayes analysis persuasive.

Clark argues that the Hayes-Head appr oach is "legally erroneous, and should not command this Court's adherence." But Clark has not pointed to any decisions that reject, or substantially diverge from, Hayes and/or Head.6

Notwithstanding the dearth of supportive case law, Clark's challenge to Hayes-Head (capsulized in Clark's Summary of Argument, quoted in the text, supra, at footnote 4, and summarized in somewhat greater detail here in the margin, at footnote 7), whether or not ultimately found persuasive, must be acknowledged to be at least a plausible line of argument.7 And so it is within the range of

_____

6. Cf. United States v. Schaffer, 110 F. 3d 530 (8th Cir, 1997), and United
States v. Aponte, 36 F.3d 1050 (11th Cir . 1994).

7. In summary, the main line of Clark's ar gument runs as follows:

(1) 18 U.S.C. S3553(e) instructs that, following the filing by the government of a motion authorizing the sentencing court to "impose a sentence below a level established by statute as a minimum sentence, . . . sentence shall be imposed in accor dance with the guidelines and policy statements issued by the Sentencing Commission pursuant to" 28 U.S.C. S 994.

(2) The Sentencing Commission's Application Note 7 following U.S.S.G. S 2D1.1 (the guideline applicable to Clark) provides that:

Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence may be "waived" and a lower

possibility that, as and when the issue comes to this court in a form requiring its resolution, this court will not subscribe to the approach taken by the Seventh and Eleventh Circuits. Alternatively, it is possible that the Supreme Court, if it has occasion to examine the issue, will not be persuaded that the Hayes-Head analysis has merit. However, Clark's difficulty on this appeal is that we can find no basis for concluding that the methodology employed by the District Court in sentencing Clark -- a methodology in conformity with Hayes-Head -- was at the time of sentencing, or is today, an "error [which was] clear under current law." Olano, 507 U.S. at 534.

Clark argues in his reply brief that"plain error" jurisprudence is inapplicable to this case, which he describes as one in which "the issue presented on appeal did not arise until after the district court had granted the government's motions under 18 U.S.C. S 3553(e) and U.S.S.G. S 5K1.1 and imposed sentence." According to Clark, "under such circumstances a party is not required to raise an objection before the sentencing court." To support this argument, Clark relies on United States v. Leung, 40 F. 3d 577 (2d Cir. 1994). In Leung, the Second Circuit,

_____

> sentence imposed (including a sentence below the applicable guideline range), as provided in 28 U.S.C.S 994(n), by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense."
>
> (3) In Melendez v. United States, 518 U.S. 120 (1996), the Supreme Court held that the government's filing of a motion under U.S.S.G. S 5K1.1, authorizing the imposition of a sentence below the guidelines, does not operate to authorize a sentence below a mandatory statutory minimum. The latter authorityflows only from the government's filing of a motion under 18 U.S.C. S 3553(e). The Melendez Court's holding appears to have accepted as its premise that the statutory S 3553(e) motion and the guidelines S 5K1.1 motion are independent of one another, constituting a "binary" rather than a "unitary" system. See 518 U.S. at 125-27. Accordingly,
> Clark argues, the Melendez affir mation of the separateness of the two motions confirms Clark's contention that"once the court has granted a government motion under 18 U.S.C.S 3553(e) and `waived' the statutory minimum, that minimum can not serve as the starting point for calculating a departure under S 5K1.1."

10

speaking through Judge (then-Chief Judge) Newman, did remand for resentencing because of certain statements the sentencing judge made in the course of denying a downward departure and giving his rationale for the sentence imposed -- statements to which defense counsel had not registered any contemporaneous objection. As Clark observes, Judge Newman described the situation presented in Leung as "not comparable to one where a defendant fails to object to factual statements in a presentencing report . . . or fails to object to a proposed legal ruling regarding an application of the Sentencing Guidelines . . . ." But the situation presented in Leung was one which is also not comparable to the situation pr esented in the case at bar. In Leung, the sentencing judge, (a) in denying a downward departure and, then, (b), in explaining the number of months of incarceration he found appropriate within the applicable guideline range, had referred to the defendant's Canadian citizenship and Chinese ancestry in a manner from which, the Second Circuit opined, "a reasonable observer , hearing or reading the remarks, might infer, however incorr ectly, that Leung's ethnicity and alien status played a role in determining her sentence." 40 F. 3d at 586-87. Given that unusual set of circumstances, the Leung court felt that procedural conventions calling for contemporaneous objections to a sentencing judge's actions were without application. The court put the matter this way:

> The Government argues that we should not reach the merits of this issue because Leung failed to object to the contested remarks at the sentencing hearing. However, Leung did not forfeit her right to challenge the sentencing remarks on appeal. The first r emark was somewhat ambiguous, and a defendant is understandably reluctant to suggest to a judge that an ambiguous remark reveals bias just as the judge is about to select a sentence. The second remark, which referred to Leung's ethnicity and which could be thought to give meaning to the first remark, occurred after the sentence had been imposed. This situation is not comparable to one where a defendant fails to object to factual statements in a presentencing r eport, see United States v. Feigenbaum, 962 F.2d 230, 233 (2d

11

cir. 1992), or fails to object to a pr oposed legal ruling regarding an application of the Sentencing Guidelines, see United States v. Baez, 944 F.2d 88, 90 (2d Cir. 1991). In a variety of circumstances in which a party could not reasonably have been expected to raise a contemporaneous objection at a sentencing hearing we have allowed the objection to be raised for thefirst time on appeal.

40 F.3d at 586.

Clark's case stands in marked contrast to Leung.  In Clark's case, the problem posed by the sentencing judge's statement was the correctness of a "legal ruling regarding an application of the Sentencing Guidelines." And, given that Hayes had been decided more thanfive years, and Melendez nearly three years, before the day of Clark's sentencing, the problem was part of the overar ching sentencing jurisprudence and hence not a problem about which "a party could not reasonably have been expected to raise a contemporaneous objection at a sentencing hearing." Leung, 40 F.3d at 586. Moreover, the objection to be raised in Clark's case went simply to a question of law; it was not one which, as in Leung -- in addition to being occasioned by an observation from the bench not readily to have been anticipated -- was infused with a sensitivity that might well have rendered the potentially objecting party "understandably reluctant" (to use the Second Circuit's apt phrase) to interpose a challenge.

Conclusion

For the foregoing reasons, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12