**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1623
_____

UNITED STATES OF AMERICA

v.

VINCENT HSIA,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 11-cr-00080-001)
District Judge:  Honorable Susan D. Wigenton

_____

Argued:  March 18, 2013
_____

Before: FUENTES, CHAGARES and BARRY, <u>Circuit Judges</u>

(Opinion Filed: May 31, 2013)
_____

Peter Goldberger, Esq. (Argued)
50 Rittenhouse Place
Ardmore, PA 19003
        -AND-
Michael Chazen, Esq.
Suite 1000
4400 Route 9 South
Suite 1000
Freehold, NJ 07728-0000

*Counsel for Appellant*

John F. Romano, Esq. (Argued)
Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102-0000

*Counsel for Appellee*

_____

OPINION
_____

BARRY, *Circuit Judge*

Vincent Hsia pleaded guilty to one count of conspiring to distribute oxycodone and four counts of filing false tax returns and was sentenced to 300 months' imprisonment. He now appeals. We will affirm the judgment of sentence and remand to the District Court for the limited purpose of amending the judgment to include the forfeiture upon motion of the government.

**I.**

Beginning in 2007, Hsia, a pharmacist in Edison, New Jersey, began filling fraudulent prescriptions for oxycodone to his co-conspirators for their own use and street-level distribution. Knowledgeable about the relevant regulations, Hsia told the co-conspirators how to fill out prescriptions to maximize distribution without being caught. He also notified the co-conspirators when the pharmacy was being audited or scrutinized, and instructed them about varying prescription pads and timing their visits to the pharmacy. Over the course of the conspiracy, Hsia illegally distributed 261,698 high-

dosage oxycodone pills.  The new business proved profitable, but Hsia failed to report these earnings on either his own or the pharmacy's tax returns, resulting in a criminal tax loss of nearly $400,000.

On September 7, 2011, Hsia pleaded guilty to one count of conspiracy to distribute oxycodone in violation of 21U.S.C. §§ 841(a)(1) & (b)(1)(C), and four counts of tax fraud in violation of 26 U.S.C. § 7206(1).  In a written application to plead guilty, he acknowledged the maximum penalty for the conspiracy count to be 20 years' imprisonment, but did not mention the maximum penalties for the tax counts.  The District Court did not address the maximum penalties at the plea hearing.

The Presentence Report ("PSR") recommended a four-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Hsia's supervisory role in the conspiracy, and a two-level enhancement pursuant to § 3B1.3 for abuse of trust, resulting in a total offense level of 42.  With a Criminal History Category of III, Hsia's Guidelines range was 324-384 months' imprisonment.  His sentencing memorandum acknowledged that he faced a statutory maximum of "20 years on the drug charge, in addition to 3 years on each tax count," and that the District Court "has the authority to properly sentence [him] to consecutive terms."  A. 153.

The District Court adopted the PSR with the exception of applying only a two-level enhancement for Hsia's supervisory role in the conspiracy.  The Court calculated Hsia's offense level to be 39, resulting in a Guidelines range of 262 to 327 months, and

3

considered and rejected his departure and variance requests. After review of the relevant § 3553(a) factors, the Court imposed a within-Guidelines sentence of 300 months' imprisonment, comprised of 240 months on the conspiracy count, 20 months on two of the tax counts, and 10 months on the two others, to run consecutively. Later that day, the Court entered a final order of forfeiture but did not include it in the judgment.

## II.[1]

Hsia raises several claims on appeal: (1) the District Court failed to advise him of the maximum sentences associated with tax offenses during the Rule 11 plea colloquy; (2) the Court should not have applied the abuse of trust enhancement; (3) the Court should not have applied the supervisory role enhancement; (4) the sentence was procedurally unreasonable; and (5) the property subject to the Court's forfeiture order should be returned because the order was not included in the final judgment.

### A. Rule 11 Violation

Hsia argues for the first time that the District Court erred by failing to inform him of the maximum sentences of any of the charged crimes to which he pleaded guilty. While he concedes his awareness of the maximum sentence for the conspiracy count, he argues that the Court's failure to advise him of the penalties associated with the four tax counts was plain error. He, however, does not seek to invalidate his guilty plea as

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

involuntary or unknowing. Rather, he seeks an order remanding for resentencing but capping the permissible sentence at 20 years.

A defendant who lets a Rule 11 error pass without objection bears the burden of establishing plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002). To establish plain error, the defendant must show that (1) there is an "error"; (2) the error "is clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings"; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal citation and quotation marks omitted).

Hsia's adherence to his guilty plea forecloses any relief. To establish the deprivation of a substantial right for an unpreserved Rule 11 violation, a "defendant is obliged to show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez-Benitez*, 542 U.S. 74, 76 (2006). Because Hsia does not seek to withdraw his guilty plea and concedes that he would have pleaded guilty even had he been informed of the maximum sentences,[2] he cannot establish plain error.

Hsia requests an alternative remedy: we should cap the District Court's authority to

---

[2] In any event, Hsia likely cannot show that he would not have pleaded guilty had he been aware of his sentencing exposure. In his sentencing memorandum and the PSR (which Hsia stated he reviewed with counsel), Hsia acknowledged that he knew the maximum sentences. Despite being well aware of the District Court's Rule 11 violation prior to sentencing, Hsia chose to remain silent, satisfied to "simply relax and wait to see if the sentence later struck him as satisfactory." *Vonn*, 535 U.S. at 73.

sentence him at twenty years' imprisonment. The proposed remedy, however, does not address any right implicated by the Rule 11 violation. A district court's failure to comply with Rule 11 threatens a defendant's right enter a guilty plea knowingly and voluntarily. As the Second Circuit has explained:

> When an error in giving the information required by Rule 11 has been made, it is to be corrected by giving the defendant an opportunity to enter a new plea on the basis of correct information. When the defendant wishes, upon receiving complete and accurate information, to adhere to his original plea, the Rule's goal of ensuring that the plea of guilty was a voluntary and intelligent choice among alternatives has been achieved, no substantial right of the defendant has been affected . . . .

*United States v. Renaud*, 999 F.2d 622, 625 (2d Cir. 1993).[3] Accordingly, the Rule 11 violation was not plain error.

## B. Abuse of Public Trust Enhancement

Hsia's next argument draws our attention to the first prong of plain error analysis. Section 3B1.3 provides for a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated

---

[3] To find support for his novel remedy, Hsia relies on *United States v. Hawthorne*, 806 F.2d 493 (3d Cir. 1986), a pre-*Vonn* case in which we remanded for resentencing when the district court failed to inform the defendant of the possibility of restitution beyond the amounts attributable to each charged crime. We held that the restitution statute, 18 U.S.C. § 3651, requires the government during plea negotiations to disclose that it will seek restitution exceeding the amount charged in the indictment, or the district court is limited to the indictment amount. *Id.* at 499. Because Hawthorne was not made aware of the possibility of additional restitution, we found that the sentence imposed in that case failed to comply with his plea agreement. Here, we are not interpreting the restitution statute, nor are we evaluating whether a sentence conformed with a plea agreement. Rather, we deal here with a straightforward Rule 11 violation, the remedy for which is well established.

the commission or concealment of the offense."[4]  The government maintains that Hsia

held a position of public trust because the public expects that licensed pharmacists will

comply with health and safety regulations for which they are responsible, and, by filling

fraudulent prescriptions, Hsia abused this trust.  Hsia contends that the District Court

committed "obvious error" because (1) pharmacists do not exercise sufficient discretion

to occupy a "position of public trust"; and (2) the provision applies only to conduct

exploiting a trust relationship vis-à-vis a particular victim or set of victims.  The

"obviousness" suggested by Hsia, however, is not reflected in the relevant case law, the

text of the provision, or the application notes accompanying the provision.  We cannot

conclude that the Court's approach was "an error [which was] clear under current law,"

*United States v. Olano*, 507 U.S. 725, 734 (1993).  *See United States v. Harris*, 471 F.3d

507, 512 (3d Cir. 2006) (no plain error in absence of Supreme Court or Third Circuit

guidance on precise question); *United States v. Clark*, 237 F.3d 293, 298-99 (3d Cir.

2001) (no plain error in light of "dearth of supportive case law").  We explain why.

To determine if Hsia is subject to the enhancement, we must determine (1) whether

he was in a position of trust; and (2) whether he abused the position in a way that

significantly facilitated his crime.  *United States v. Sherman*, 160 F.3d 967, 969 (3d Cir.

---

[4] Whether a defendant receives a 3B1.3 enhancement for "abuse of trust" or for using a "special skill" can be of critical importance;  "[I]f this [§ 3B1.3] adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)." § 3B1.3.

1998).  At the first step, we look to "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority to which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." *Id.*  Additionally, the Guidelines commentary defines a position of public or private trust as follows:

> "Public or private trust" refers to a position of . . . trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference).  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature....

U.S.S.G. § 3B1.3 cmt. n. 1.

As a licensed pharmacist, Hsia was relied on by the public to safely distribute prescription medication in accordance with relevant regulations, and in his position was able to engage in criminal conduct without supervision in a manner that was difficult to detect.  Although, as we suggested above, we have found no reported cases addressing whether a pharmacist occupies position of public trust, the case law is replete with examples of defendants occupying similar positions with respect to public health.  *See, e.g.*, *United States v. Stella*, 591 F.3d 23, 29 (1st Cir. 2009) (nurse); *United States v. Feingold*, 454 F.3d 1001, 1013 (9th Cir. 2006) (licensed doctor); *United States v. Gonzalez-Alvares*, 277 F.3d 73, 81-82 (1st Cir. 2002) (dairy farmer who provided milk to processing plants); *United States v. White*, 270 F.3d 356, 372-73 (6th Cir. 2001) (water plant officials); *United States v. Turner*, 102 F.3d 1350, 1360 (4th Cir. 1996) (mine

8

owners). While a pharmacist might not exercise the degree of discretion of a mine owner, a physician, or a nurse, a pharmacist is responsible for ensuring that each prescription is not fraudulent, and is filled with the correct medication and the correct dosage. Indeed, this is why pharmacists are licensed and ordinarily "subject to significantly less supervision" than other employees. U.S.S.G. § 3B1.3 cmt. n. 1. In the absence of any authority to the contrary, we cannot say it is "clear or obvious" that a pharmacist cannot occupy a position of public trust.

Hsia's second contention—that the enhancement applies only when the defendant's criminal conduct breaches a trust relationship vis-à-vis the victim—is also far from "obvious." While abuse of a *private* trust requires this,[5] it is less clear that abuse of the *public* trust requires any specific trust relationship. Indeed, several courts, in cases similar to this one, have applied the enhancement in circumstances where defendants abused access to controlled substances in a manner that did not directly victimize specific members of the public. *See, e.g.*, *Stella*, 591 F.3d at 28 (nurse abused the public trust by taking advantage of "unsupervised access to drugs . . . and unsupervised authority to refill medications"); *Feingold*, 454 F.3d at 1013 (defendant "distributed the drugs in question under the aegis of being a licensed naturopathic physician"); *United States v. Hoffer*, 129

---

[5] The examples of "abuse of trust" in the Guidelines commentary—an attorney embezzling his or her client's funds, a bank executive issuing a fraudulent loan, and a physician sexually abusing a patient—support Hsia's contention. § 3B1.1 cmt. n. 1; *see United States v. Hickman*, 991 F.2d 1110, 1112 (3d Cir. 1993) (explaining that abuse of private trust contemplates a "trust relationship between [defendant] and his victim"). The commentary, however, fails to provide any examples of "public trust" that might guide

9

F.3d 1196, 1204 (11th Cir. 1997) (defendant "betrayed society's trust by using his prescription writing privileges to distribute controlled substances outside the legitimate practice of medicine").

In light of this authority, and in the absence of any authority to the contrary, we cannot say it was plain error to conclude that Hsia occupied a position of public trust, and abused that trust in a manner that significantly facilitated his crime.[6]

## C. Enhancement for Supervisory Role in Offense

Hsia also appeals the two-point role enhancement for being the supervisor of criminal activity involving less than five participants. U.S.S.G. § 3B1.1(c) (increase by 2 levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal

---

our inquiry.

[6] This is not to say that Hsia's challenge is not a plausible line of argument, or, even, potentially persuasive. The government's interpretation of the public trust enhancement approaches a *per se* rule that licensure is the equivalent of bestowing public trust, an approach that, in addition to being quite broad, seems difficult to reconcile with the provision's careful distinction between occupying a position of "public and private trust" and having a "special skill." *See* § 3B1.3 cmt. n.4 ("'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."). Under the government's approach, each of these paradigmatic examples of a special skill would also qualify as a position of public trust. *See supra* n. 4 (explaining significant consequences of applying enhancement on the basis of "special skill" rather than "abuse of trust").

As we have observed before, "it is within the range of possibility that, as and when the issue comes to this court in a form requiring its resolution, this court will not subscribe to the [District Court's] approach. Alternatively, it is possible that the Supreme Court, if it has occasion to examine the issue, will not be persuaded [by the District Court's approach]. However, [appellant]'s difficulty on this appeal is that we can find no basis for concluding that the methodology employed by the District Court in sentencing

10

activity" involving less than five participants).  We have stated that a defendant acts as a manager or supervisor of criminal activity when he "exercises some degree of control over others involved in the offense."  *United States v. Chau*, 293 F.3d 96, 103 (3d Cir. 2002) (citation omitted).  At sentencing the government introduced evidence that Hsia directed his co-conspirators by instructing them how to fill out prescriptions correctly so that he could dispense increased quantities of oxycodone and avoid red flags, and to time visits to avoid suspicion.  Because the evidence was sufficient to establish that he exercised a degree of control over others involved in the offense, the District Court did not err in finding that he qualified for the role enhancement.

## D.  Procedural Reasonability of the Sentence

Hsia makes several procedural arguments on appeal.  First, he contends that the District Court erred by imposing consecutive sentences without stopping to "consider . . . the factors set forth in § 3553(a)", in violation of 18 U.S.C. § 3584(a).  This contention is without merit.  Hsia does not dispute that the Court considered the § 3553(a) factors before imposing sentence, which is all that is required.  *United States v. Velasquez*, 304 F.3d 237, 241-42 (3d Cir. 2002).  That the Court did not also, separately and independently, restate the § 3553(a) factors while specifically discussing whether to impose the sentences concurrently or consecutively was not error.  Hsia provides no authority that a Court must repeat its otherwise sufficient § 3553(a) analysis.

---

him . . . was at the time of sentencing, or is today, an 'error [which was] clear under current law.'"  *Clark*, 237 F.3d at 299 (quoting *Olano*, 607 U.S. at 734).

Second, Hsia contends that the District Court did not offer "concrete reasons" for its within-guidelines sentence. To the contrary, the Court considered the § 3553(a) factors, the "brazen" and "greedy" nature of the conduct, the need to protect the community, abuse of Hsia's position as a pharmacist, the Guidelines range, the need to avoid unwarranted disparities, the massive quantities of oxycodone distributed, the seriousness of the tax offenses, and the need for deterrence. This suffices to satisfy § 3553(c)(1). *See United States v. Gricco*, 277 F.3d 339, 363 (3d Cir. 2002).

Third, Hsia argues that the District Court erred by failing to make clear its basis for denying Hsia's request for a downward departure based on his diminished capacity. We lack jurisdiction to review the Court's refusal to depart from the applicable Guidelines range absent a showing that the Court erroneously believed that it lacked authority to depart. *United States v. King*, 604 F.3d 125, 141 n. 9 (3d Cir. 2010). Hsia fails to make any such showing. Rather, the record establishes that the Court simply exercised its discretion to deny the requested relief.[7]

### E. Forfeiture

Finally, Hsia argues that his forfeited property should be returned to him immediately because the District Court failed to include the final forfeiture order in the judgment. We disagree. A failure to include in the judgment a forfeiture that the court

---

[7] For instance, the District Court stated that it was "not satisfied," based on the physician's submissions, "that [Hsia] suffered from a diminished capacity which would inure any type of departure downward or any variance downward ," and went on to

and all of the parties intended to be included constitutes a clerical error correctable at any time under Rule 36. *United States v. Bennett*, 423 F.3d 271, 281 (3d Cir. 2005); *see* Fed. R. Crim. P. 32.2(b)(4)(B) ("The court must . . . include the forfeiture order . . . in the judgment, but the court's failure to do so may be corrected at any time under Rule 36."). All parties intended the judgment to include the forfeiture order: Hsia stipulated to the forfeiture, relied on the stipulation in arguing for leniency, and the Court entered a preliminary forfeiture order. Because Hsia raised this issue on appeal, however, the Court was deprived of jurisdiction to amend the error. We therefore remand for the limited purpose of amending the judgment to include the forfeiture upon the government's motion.

### III. Conclusion

For the reasons set forth above, we will affirm the judgment of sentence. We will, however, order a remand to the District Court for the limited purpose of including the forfeiture in its judgment upon motion of the government.[8]

---

explain its reasons for finding that Hsia's emotional or mental health did not contribute to his criminal conduct. A. 137-38.

[8] Judge Fuentes does not join in part II.C, because he does not believe that the supervisory role enhancement applies in this case. He would conclude that Hsia's status was that of a co-conspirator aiding his cohorts in carrying out the criminal enterprise, and that such evidence does not indicate that Hsia exercised actual authority over his codefendants. Judge Fuentes would adopt the Sixth Circuit's holding that "provid[ing] crucial information . . . and play[ing] an important role in the offense . . . is not equivalent to exercising managerial control over the participants and/or the assets of a criminal enterprise." *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000). Judge Fuentes would vacate for resentencing without the supervisory role enhancement.

13

We note only that the Sixth Circuit observed, at more than one point in its Opinion, that the government agreed at sentencing that the supervisory role enhancement did not apply because the defendant was "at best" a co-conspirator, and that, because the district court had not articulated any factual basis for the enhancement, the Sixth Circuit was "compelled" to conduct a *de novo* review of the record rather than review under the more generous clear error standard. *Id.* at 809, 811.

14