**UNITED STATES of America**

v.

**Evgueni POJILENKO a/k/a Eugene, a/k/a Zheka Evgueni Pojilenko, Appellant**

No. 03–4446.

United States Court of Appeals, Third Circuit.

Argued June 7, 2005.

Filed July 27, 2005.

Joel Harvey Slomsky (Argued), Philadelphia, PA, for Appellant.

Andrea G. Foulkes, Mark J. Ehlers (Argued), Office of the United States Attorney, Philadelphia, PA, for Appellee.

Before: AMBRO, STAPLETON, and ALARCON,* Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant Evgueni Pojilenko challenges both his conviction and sentence. First, Pojilenko maintains he was deprived of a fair trial as a result of the admission into evidence of certain references to organized crime. Because we find that the District Court did not commit plain error in allowing the challenged testimony, we will affirm Pojilenko's judgment of conviction. Second, Pojilenko challenges his sentence pursuant to *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We will vacate Pojilenko's sentence and remand for resentencing in accordance with *Booker*.

### I.

From 1999 to 2002, Pojilenko was involved in a criminal enterprise known as the "KGB," an organization led by Leonid Chernyak that committed various crimes including robbery, extortion, fraud, and drug trafficking. Pojilenko served, in common parlance, as "muscle" for the organization.

---

* Hon. Arthur L. Alarcon, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

In December 2000, Chernyak devised a scheme to rob several potential drug purchasers. Two women attempted to purchase 200 pills of ecstacy. One of the women knew a drug dealer named "Greek John," who told them that he had a source in Philadelphia who could supply the drugs. That source was a KGB associate, 16 year old Leonid Kadomsky. Kadomsky sought to broker the ecstacy sale between Greek John and the KGB.

Chernyak instead decided that the KGB would rob the two women and Greek John when they appeared with the money to buy the drugs. Chernyak planned the robbery, recruited Pojilenko and another man, Kitiashvili, to rob the purchasers, and later instructed them on how to divide the money. Cherynak had Kadomsky detain the robbery victims until Pojilenko and Kitiashvili arrived and physically robbed the individuals.

In April 2002, a federal grand jury indicted Pojilenko on 48 counts of RICO and RICO conspiracy. Racketeering acts 8A, 8B and 8C charged Pojilenko with robbery and conspiracy to rob during the above-described incident.

At trial, the District Court allowed the following background testimony:

(1) Agent Kepple of the FBI testified that he was assigned to the organized crime squad and had been previously assigned to the Eurasian Organized Crime Squad;

(2) Another FBI agent reported that he was a member of the Organized Crime Squad;

(3) A Philadelphia police officer testified that he worked with the case agent and other federal agents assigned to the Eurasian Organized Crime Squad; and

(4) An agent of the Pennsylvania Attorney General's office testified that his investigation proceeded in cooperation with the FBI's Eurasian Organized Crime Squad.

Each law enforcement official then testified about his respective investigations of Pojilenko and the other co-defendants.

Evidence introduced at trial revealed that Pojilenko's interaction with Kadomsky related to the robbery in question was very limited. The only evidence of their interaction that night was that (1) Kadomsky spoke with either Pojilenko or Kitiashvili on the phone on the night of the robbery (but did not know to which individual he actually spoke), and (2) Chernyak told Pojilenko to hurry along to the robbery location because Kadomsky wouldn't "hold the girls for 20 minutes."

Pojilenko was found guilty. In calculating his sentence for racketeering act 8, the District Court applied a two-level enhancement for the use of a minor, pursuant to U.S.S.G. § 3B1.4. The Court then sentenced Pojilenko to 168 months of imprisonment.

Pojilenko now appeals, arguing (1) that the admission of the above-referenced law enforcement officers' testimony was error, (2) that his sentence must be vacated in light of *Booker*, and (3) that the two-level enhancement was improper.[1]

## II.

■ Pojilenko contends that the testimony of law enforcement officials in which those officials identified themselves as being members of organized crime squads unfairly associated him with organized crime and created a situation in which the jury believed he was a dangerous man. Because this objection was not raised at trial, we review for plain error. *United States v. Boone*, 279 F.3d 163, 174 n. 6 (3d Cir.2002). We find none. The challenged testimony "served the legitimate purpose

---

**1.** We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C § 3742.

of apprising the jury of [the officers'] qualifications for investigating Appellant's activities." *United States v. Vastola*, 899 F.2d 211, 242 n. 38 (3d Cir.1990) (affirming the District Court's decision to permit two law enforcement officers to testify that they were assigned to organized crime units, and rejecting the argument that the testimony gave an improper inference that the defendant had connections to organized crime). Its probative value was not outweighed by the likelihood of undue prejudice to appellant. *Id.*[2]

### III.

■ Pojilenko was sentenced before the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the District Court applied the Sentencing Guidelines as mandating the extent of its sentencing discretion. Accordingly, we will vacate Pojilenko's sentence and remand for resentencing in accordance with *Booker*. *United States v. Davis*, 407 F.3d 162 (3d Cir.2005) (denying rehearing en banc).

### IV.

While the District Court's sentencing discretion will not be limited by the Sentencing Guidelines on remand, the Sentencing Reform Act of 1984 ("the Act"), even "without the 'mandatory' provision, . . . nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Booker*, 125 S.Ct. at 764. Thus, the Act requires that the District Court consider, among other things, "the Guidelines' sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant.' " *Id.* For this reason, Pojilenko's challenge to the District Court's interpretation of U.S.S.G. § 3B1.4 is not a moot issue, and we will address it in the interest of conserving judicial resources.[3] We review the District Court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Mobley*, 956 F.2d 450, 451 (3d Cir.1992).

■ Pojilenko argues that there is no evidence he "used" Kadomsky within the meaning of § 3B1.4 and that the use of Kadomsky by other members of the conspiracy cannot be attributed to Pojilenko for purposes of a § 3B1.4 enhancement. We agree.

Section 3B1.4 of the Sentencing Guidelines provides, in relevant part, that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase [the base offense level] by 2 levels." U.S.S.G. § 3B1.4. The application notes to this section define "use or attempted use" as including "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting or soliciting."

---

**2.** Pojilenko also objects to the fact that one other witness testified that the term "serious guy," a term which was applied to him, referred to people who may be close to the "mafia." However, that testimony was probative of Pojilenko's intent to create fear in order to achieve extortion. *See United States v. DiSalvo*, 34 F.3d 1204, 1212, (3d Cir.1994) (citing *United States v. Polizzi*, 801 F.2d 1543, 1555 (9th Cir.1986) (testimony of alleged mafia connection relevant to victim's state of mind and defendant's intent in collecting an extortionate loan)).

**3.** In some situations requiring resentencing in accordance with *Booker*, it may be prudent to defer resolution of other challenges to the District Court's application of the Sentencing Guidelines. *See, e.g., United States v. Urban*, 404 F.3d 754, 783 (3d Cir.2005). However, where we conclude, as we do here, that the District Court's interpretation of a Guideline provision material to resentencing is in error, there is a substantial likelihood that the District Court will again reject what we would hold to be the correct interpretation and that would occasion an unnecessary, second appeal.

## A. *"Use" by Appellant*

■ Numerous courts have held that there must be some affirmative act beyond mere joint participation in a crime with a minor to qualify as "use of a minor" under § 3B1.4. *See United States v. Parker*, 241 F.3d 1114 (9th Cir.2001) (holding defendant's participation in a robbery with a minor does not warrant a sentence enhancement under § 3B1.4 "in the absence of evidence that the defendant acted affirmatively to involve the minor in the robbery, beyond merely acting as his partner"); *United States v. Suitor*, 253 F.3d 1206 (10th Cir.2001) (holding that "the two-level § 3B1.4 increase is only applicable if a defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction"); *United States v. Ramsey*, 237 F.3d 853, 860 (7th Cir.2001) (noting that the defendant must still take affirmative acts to involve the minor in the commission of the offense); *United States v. Butler*, 207 F.3d 839 (6th Cir.2000) (finding Congress contemplated an offender who actually exercised some control or took some affirmative role in involving the minor). We agree with our sister Circuits that some affirmative act is necessary beyond mere partnership in order to implicate § 3B1.4. To hold that any defendant who merely participated with a minor in a crime is subject to a two-level enhancement and would create, in effect, an across-the-board enhancement that would conflict with the notion that this enhancement is reserved for defendants who play a particular role in the offense.

The District Court is, of course, free to allow the parties to supplement the sentencing record on remand. We comment on the current record only for the purpose of illustrating our view of the scope of § 3B1.4.[4] As we view the record, it would not support a finding that Pojilenko committed an affirmative act beyond mere partnership. The record reflects that the recruitment and direction of Kadomsky were performed by Chernyak before Pojilenko became involved in the robbery as "muscle." Even if Kadomsky did indeed speak to Pojilenko on the telephone the night of the robbery, a telephone call from Kadomsky in which he informed Pojilenko of some robbery details cannot reasonably be viewed as Pojilenko taking affirmative steps with respect to Kadomsky's participation. Similarly, the telephone call in which Chernyak told Pojilenko that Kadomsky could only "hold the girls for 20 minutes" may have informed Pojilenko regarding Kadomsky's involvement, but being told something by Chernyak certainly is not the same as Pojilenko's directly performing an affirmative act to recruit or direct Kadomsky.

The record simply lacks evidence of any affirmative act by Pojilenko to direct, command, encourage, intimidate, counsel, train, procure, recruit or solicit Kadomsky. We must nevertheless address whether Chernyak's use of Kadomsky is attributable to Pojilenko.

## B. *Attribution of Use by a Co-Conspirator*

■ The Court of Appeals for the Eleventh Circuit held in *United States v. McClain*, 252 F.3d 1279 (11th Cir.2001), that a § 3B1.4 enhancement is appropriate when the defendant engaged in jointly un-

---

4. By contrast, we express no opinion with respect to Pojilenko's contention that the District Court erred in applying the grouping rules of the Guidelines. U.S.S.G. §§ 3D1.1–3D1.4. That contention, as we understand it, does not attribute to the District Court an erroneous interpretation of those rules. Rather, Pojilenko insists that the District Court's conclusions were not supported by the record.

dertaken criminal activity and another participant therein "used a minor" so long as that use by another was reasonably foreseeable. We have yet to rule on whether a co-conspirator's reasonably foreseeable use of a minor can be attributed to other members of a conspiracy for purposes of applying an enhancement under § 3B1.4. We now hold that it cannot.

The *McClain* Court's view is predicated on § 1B1.3(a) of the Sentencing Guidelines. That section provides that in a case of jointly undertaken criminal activity, "[u]nless otherwise specified, . . . adjustments in Chapter Three[ ] shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . ." U.S.S.G. § 1B1.3(a)(1)(B). While this provision provides a generally applicable rule based on *Pinkerton* principles,[5] it nevertheless expressly provides that the general rule does not apply to a guideline provision if that provision "otherwise specifie[s]." In our view, § 3B1.4 "specifie[s]" that "use of a minor" enhancements be individualized, and thus not based on the acts of co-conspirators.

First, the use of a minor provision specifically states that the two-level enhancement will apply if "*the defendant* used or attempted to use a person less than eighteen years of age." U.S.S.G. § 3B1.4 (emphasis added). "Such defendant-specific language invites a finding that the defendant being sentenced [used or attempted to use a minor] before the enhancement may be applied." *United States v. Moore,* 29 F.3d 175, 178 (4th Cir.1994).

More importantly, however, the structure of the Sentencing Guidelines compels

the conclusion that the use of a minor enhancement must be based on an individualized determination of each defendant's culpability. Part B of Chapter Three of the Sentencing Guidelines contains sections that "provide[ ] adjustments to the offense level based upon the role *the defendant* played in committing the offense." U.S.S.G. Chapter Three, Part B, Introductory Commentary (emphasis added). In addition to the use of a minor adjustment, Part B permits sentencing adjustments based on (1) whether a particular defendant was an organizer, leader, manager or supervisor of a group criminal activity, *see* U.S.S.G. § 3B1.1, (2) whether the defendant was a minor or minimal participant in the criminal activity, *see* U.S.S.G. § 3B1.2, and (3) whether the defendant abused a position of trust, *see* U.S.S.G. § 3B1.3. As the *Moore* Court explained,

> These roles in the offense provisions were designed to permit sentencing judges to make individualized distinctions among defendants engaged in a criminal enterprise. By their very nature, [they] cannot be based upon the actions of co-conspirators; for example, a defendant who was not the organizer of a criminal activity could not receive a role enhancement merely because it was reasonably foreseeable that a co-conspirator would organize a criminal scheme.

*Moore,* 29 F.3d at 179.

The role in the offense provisions of Part B are clearly intended to distinguish between participants in an offense based on whether their particular roles make them more or less culpable than others who commit the same offense. As a result, "it would undermine the very purpose

---

**5.** This section embodies the principle enunciated in *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), that a conspirator is criminally liable for the acts of other members of the conspir-

acy that were taken in furtherance of the conspiracy and reasonably foreseeable as a necessary and natural consequence of the conspiracy.

of [these provisions] to hold that a defendant may receive [a role in the offense enhancement] even if that defendant did not personally satisfy the requirements" of the particular enhancement provision. *Id.* "Assessing [a use of a minor enhancement] against all co-conspirators fails to distinguish their respective levels of culpability, and attributes to all co-conspirators the exceptional malfeasance of one." *Id.* "Such a result would … render the characterization of § 3B1.4 as a 'role in the offense' adjustment a misnomer." *Butler,* 207 F.3d at 848.

■ We hold that the *Pinkerton* principles of Section 1B1.3(a) should not be used in applying the use of a minor provisions of § 3B1.4.[6]

### V.

For the foregoing reasons, we will affirm the judgment of conviction, vacate the sentence, and remand for resentencing consistent with this opinion.

ALARCÓN, Circuit Judge, concurring.

I concur in Part II and Part III of the Court's opinion.

Because we must remand this matter to the District Court for resentencing in accordance with *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the District Court will be free to conduct an evidentiary hearing to determine the appropriate sentence to impose, within its discretion, pursuant to the Sentencing Guidelines.

Since we do not now know the evidence that the Government will present, if any, to demonstrate that Appellant "used" Kadomsky within the meaning of § 3B1.4, I believe that question is not ripe for review at this time. I would refrain from attempting to interpret the term "used" in § 3B1.4 until after the District Court makes its findings following resentencing proceedings.

---

**6.** Relying on *United States v. Detwiler,* 338 F.Supp.2d 1166 (D.Or., 2004), Pojilenko also challenges on separation of powers grounds the constitutionality of the Sentencing Reform Act as amended by the "Feeney Amendment," Pub.L. No. 108–21, § 401, 117 Stat. 650 (2003). He asks us to direct that only the Sentencing Guidelines in effect before the Feeney Amendment be applied on remand in an advisory capacity. We decline to do so. This argument was not advanced in the District Court, and our review is confined to plain error. The Supreme Court rejected a separation of powers challenge to the Act in *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). While the Feeney Amendment's change in the composition of the Sentencing Commission may provide an arguable basis for distinguishing *Mistretta,* the District Court clearly did not commit plain error in applying the post-Feeney Amendment guidelines in this case. Even if an argument is "plausible," any error is not "plain" when it was not "clear under current law." *United States v. Clark,* 237 F.3d 293, 298–99 (3d Cir.2001) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).