**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 7, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10250

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MOHAMMED KHALIL GHALI

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, HIGGINBOTHAM and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Mohammed Khalil Ghali appeals his bench-trial conviction on fifteen counts of a nineteen-count indictment, arguing that the district court erred by denying his motion to suppress evidence and also that the evidence was insufficient to support his conviction on counts ten through eighteen, the "money laundering-sting" counts

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(18 U.S.C. § 1956(a)(3)(A)),[1] because it did not show he was expressly informed the goods in question were stolen. Ghali also appeals his sentence, arguing that the district court erred by applying sentence enhancements for the use of a minor to commit an offense and for obstruction of justice. We hold that the district court properly denied the motion to suppress evidence, we reject Ghali's contentions as to the sufficiency of the evidence, and we conclude that the district court did not err in applying the challenged sentence enhancements. Accordingly, we affirm.

### Facts and Proceedings Below

Mohammed Khalil Ghali (Ghali)[2] owned and operated Sunshine Market, a convenience store in Arlington, Texas, and Sunshine Wholesale, a wholesale business in a warehouse in Grand Prairie, Texas.[3] Ghali also owned A-1 Market, another convenience store in Arlington, Texas. The government suspected that Ghali, through his convenience stores and wholesale business, was buying and reselling stolen goods. Beginning September 12, 2001, the Ghali organization was investigated by a federal task force consisting of

---

[1] In this opinion, we adopt the indictment's description of a violation of 18 U.S.C. § 1956(a)(3)(A) — "money laundering-sting." Section 1956(a)(3)(A) criminalizes conducting a financial transaction involving property that is represented by federal law enforcement agents to be the proceeds of specified unlawful activity.

[2] Of the Ghali family members mentioned in this opinion, only Mohammed Ghali will be referred to simply as "Ghali." All others will be referred to by their full name or by their first name.

[3] The record shows that Stephanie Ghali (Stephanie), the second wife of Ghali, was the record owner of Sunshine Market and Sunshine Wholesale. Regardless, Mohammed Ghali effectively owned and controlled these businesses.

representatives from the FBI, the U.S. Food and Drug Administration's Office of Criminal Investigations, the Internal Revenue Service's Criminal Investigation Division, the U.S. Customs Service, and the Fort Worth Police Department. The task force's investigation continued until Ghali's arrest on May 21, 2003.

The investigation included a sting operation using confidential informants as well as an undercover officer. During the course of the sting operation, Ghali's organization paid approximately $230,000 for property that was represented by task force agents to have been stolen in Oklahoma and then brought from Oklahoma to Texas for sale.[4] There were numerous transactions in which somebody in the Ghali organization, although never Ghali in person, purchased property thus represented as stolen. Nine of these transactions, occurring from November 2002 to May 2003, involved property valued at more than $5,000, which led to the nine counts of money laundering-sting. Although Ghali did not personally make the payments in these nine transactions, the government connected Ghali to the approval of each charged transaction through recorded phone calls. On May 14, 2003, after one of the largest of these transactions, Ghali instructed his brother Luai Ghali (Luai) to use Ghali's minor son Amir to help move the property represented to be stolen into a storage facility.

---

[4] It appears that in most of these transactions the representation to the Ghali organization was that the seller had purchased the property in Texas from the thief (or another party) who had brought it from Oklahoma.

Amir did in fact help Luai store 936 cases of infant formula and 712 cartons of cigarettes.

The federal task force's investigation also included the inspection of outbound shipments from Sunshine Wholesale to various entities via Federal Express (FedEx). The first of these searches, all of which were conducted without a warrant, occurred on May 6, 2002, after FedEx employees in Irving noticed that a shipment of infant formula from Sunshine Wholesale in Grand Prairie, Texas, to United Trading in Lexington, Kentucky, was mislabeled as baby products.[5] A federal task force officer had previously alerted FedEx to be on the lookout for suspicious shipments of infant formula, and so this shipment was brought to the attention of the federal task force, which then searched the shipment and found cans of infant formula that had previously been represented as stolen. After this, the FedEx employees in Irving contacted a member of the federal task force every time that Sunshine Wholesale made a shipment, or received an interstate shipment, via FedEx. In response to these contacts, a member of the task force would go to the FedEx warehouse to search the shipment.

Although the record indicates that the task force made numerous warrantless searches of Sunshine Wholesale's FedEx shipments, only the evidence from certain of these searches was

---

[5]According to the unchallenged testimony of a FedEx witness, a shipment of baby products can be shipped in the same trailer as hazardous material, but a shipment of food products, such as infant formula, cannot.

4

introduced in the guilt-innocence phase of the trial. Specifically, the introduced evidence was obtained in January, February, and March of 2003 from the searches of FedEx shipments from Sunshine Wholesale to Power Supply, a company in Florida owned by the family of Mirco Vietti (Vietti). Prior to these particular searches, the federal task force had obtained the full cooperation of Vietti in support of its investigation of the Ghali organization.

Ghali moved to suppress the evidence obtained during the task force's warrantless searches, arguing that the searches were unconstitutional. Following a pre-trial suppression hearing, the district court denied the motion to suppress after finding that, due to Vietti's close cooperation, the evidence from the shipments to Power Supply inevitably would have been discovered. The district court alternatively found that Vietti had impliedly consented to the government's warrantless searches at FedEx.

Following a bench trial, Ghali was convicted of one count of conspiring to commit offenses against the United States (18 U.S.C. § 371), one count of possessing goods stolen from an interstate shipment (§ 659), three counts of transporting stolen property in interstate commerce (§ 2314), nine counts of money laundering-sting (§ 1956(a)(3)(A)), and one count of conspiring to commit a money-laundering offense (§ 1956(h)). At sentencing, post-*Booker*, the district court determined the advisory guideline range by applying

5

the following offense-level enhancements: fourteen levels for a loss amount of $528,627 (U.S.S.G. § 2B1.1(b)(1)(H)); two levels for receiving and selling stolen property (§ 2B1.1(b)(4)); two levels for a conviction under § 1956 (§ 2S1.1(b)(2)(B)); four levels for being an organizer or leader (§ 3B1.1(a)); two levels for using a minor to commit a crime (§ 3B1.4); and two levels for obstruction of justice (§ 3C1.1). The court sentenced Ghali to 168 months' imprisonment (stating that "[t]his consists of" concurrent terms of 60 months on count 1, 120 months on each of counts 6-9, and 168 months on each of counts 10-19) followed by concurrent three year terms of supervised release on each such count and a $1500 special assessment ($100 for each of the counts of conviction). Certain forfeitures were also ordered.

**Discussion**

### A. *The motion to suppress evidence*

Reviewing a district court's ruling on a motion to suppress, this court accepts the district court's factual findings "unless clearly erroneous or influenced by an incorrect view of the law." *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993). The district court's conclusions of law are reviewed *de novo*. *Id.* "In reviewing a ruling on a motion to suppress, this Court views the evidence taken at trial as well as the evidence taken at the suppression hearing." *Id.* (citing *United States v. Rideau*, 969 F.2d 1572 (5th Cir. 1992) (*en banc*)).

6

Ghali moved to suppress all evidence seized without a warrant from the shipments of Sunshine Wholesale.[6]  Following the suppression hearing, the district court denied the motion to suppress because the evidence inevitably would have been discovered, and also because the addressee, Mirco Vietti, had impliedly consented to the searches.  While the district court orally denied the motion to suppress prior to commencement of the trial, it also informed the parties that it would issue a written opinion and order, which it did on April 2, 2004, after the conclusion of the trial.

In analyzing whether the inevitable-discovery exception applied to the exclusionary rule, the district court relied on the legal standard from our decision in *United States v. Cherry*, 759 F.2d 1196 (5th Cir. 1985): "In order for the [inevitable-discovery] exception to apply, the prosecution must demonstrate both a reasonable probability that the evidence would have been discovered in the absence of police misconduct and that the government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation."  *Id.* at 1205-06.  The prosecution must make this demonstration by a preponderance of the evidence.  *Nix v. Williams*, 104 S.Ct. 2501, 2509 (1984).

---

[6]Specifically, Ghali's motion addressed the following: "Evidence seized without a warrant on February 11th and 28th, and March 24th, 2003, and other times unknown from Federal Express Co., the United States Mail, and other carriers by 'ICE agents' Ft. Worth Police, Customs, Immigration and the Dept. Of 'Homeland Security'."

In its opinion, the district court noted that Ghali's motion to suppress was directed to the warrantless searches conducted in early 2003 of Sunshine Wholesale's FedEx shipments to Mirco Vietti's company, Power Supply. Based on evidence that the government was actively pursuing a substantial alternate line of investigation through Vietti in Florida, and based on evidence of Vietti's full cooperation with the government, the district court found that the government had met its burden to establish that the evidence from the shipment to Vietti inevitably would have been discovered. Based on our review of the record, the district court's findings were neither clearly erroneous nor the result of an incorrect view of the law.

Ghali's appeal on this issue does not seriously challenge the district court's finding that the evidence obtained from the warrantless search of the FedEx shipments to Vietti inevitably would have been discovered. Instead, Ghali argues that the trial court erred by focusing only on the FedEx shipments to Vietti. Ghali conclusorily states, "It is undisputed that the Government introduced evidence, not only coming from Vietti in Florida, but from the Shallash family in Kentucky and others in an effort to convince the court that everything Appellant did with connection to Sunshine Wholesale was tainted by stolen property." Ghali argues that evidence from warrantless searches of Sunshine Wholesale's FedEx shipments to other customers should not have been admitted because Vietti's cooperation had nothing to do with the search of

8

those shipments.  However, contrary to Ghali's assertions, none of the evidence from the other warrantless searches was admitted during the guilt-innocence phase of the trial.

Ghali has pointed to no evidence that was admitted during the trial that was obtained during a warrantless search of a FedEx shipment that was not going to Vietti's company.  The only specific evidence that Ghali has come close to complaining of is the May 6, 2002 FedEx shipment of infant formula from Sunshine Wholesale to United Trading, which was owned by "the Shallash family in Kentucky."  After reviewing the record, however, we agree with the government that the evidence from the May 6, 2002 shipment was not introduced during the trial, although it was properly introduced during the suppression hearing.  While Ghali speaks vaguely of evidence from other searches, he has not shown that any such evidence was admitted, nor has he argued that the evidence that was admitted was obtained from illegal searches (other than those in 2003 of shipments to Vietti's company).[7]  In summary, because the

_____

[7]At oral argument, Ghali's counsel contended that he did indeed make a "fruit of the poisonous tree" argument by quoting in his Appellant's Brief the following language from the district court opinion: "While FedEx may have been suspicious of Sunshine Wholesale based on the odd appearance of its May 6, 2002 shipment of baby formula, this suspicion was insufficient to permit FedEx to initiate an open-ended consent to inspection by the U.S. Customs Service of all packages from Sunshine Wholesale."  Even if quoting portions of the district court opinion could be considered making an argument, this language does not constitute a "fruit of the poisonous tree" argument.  Indeed, the warrantless search of the May 6, 2002 shipment was valid due to its suspicious nature.  *See* *United States v. Blum*, 329 F.2d 49, 52 (2d Cir. 1964) (upholding a U.S. Customs warrantless search of a package that the carrier could tell without opening contained contents that had been misdeclared).  Therefore, the warrantless search of the May 6, 2002 shipment is not itself a "poisonous tree."  The district court found subsequent warrantless searches at FedEx to be improper (and the government does not challenge this ruling), but found that, for the evidence the government

9

only evidence obtained during the government's improper warrantless searches of the FedEx shipments that was admitted during the guilt-innocence phase of the trial came from the shipments to a company controlled by a fully cooperating individual (Vietti), that evidence inevitably would have been discovered. Therefore, the district court did not err in denying Ghali's motion to suppress evidence.

## B.    *Sufficiency of the evidence*

Ghali challenges the sufficiency of the evidence for his conviction on nine counts of violating 18 U.S.C. § 1956(a)(3)(A).[8] Specifically, Ghali argues that the government failed to prove that the items purchased by Ghali or his agents were actually represented to him as stolen. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and affirm if a rational trier of fact

___

sought to admit, the exclusionary rule did not apply (and in any event Vietti's implied consent sustained those searches of shipments to his company). Ghali has not argued that the admitted evidence was obtained from such improper searches (other than those of the 2003 shipments to Vietti).

[8]These counts are the money laundering-sting counts, count ten through count eighteen of the superseding indictment. The relevant portion of the money-laundering statute provides:

> "Whoever, with the intent – (A) to promote the carrying on of specified unlawful activity . . . conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term 'represented' means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section."  18 U.S.C. § 1956(a)(3)(A).

could have found that the government proved all essential elements of the crime beyond a reasonable doubt. *United States v. Puig-Infante*, 19 F.3d 929, 937 (5th Cir. 1994).

Ghali argues that the property involved was not represented to him as stolen, as was alleged in the indictment and as is required by section 1956(a)(3). He concedes that the property involved was probably represented to his co-indictees as stolen, but he argues that there is no proof in the record that it was ever represented *to him* that the property was stolen. Ghali claims that "the Government had the duty to explicitly represent that the property was proceeds of an unlawful activity (actually stolen)." However, in *United States v. Castaneda-Cantu*, 20 F.3d 1325 (5th Cir. 1994), we rejected an argument similar to the one made by Ghali:

> "Law enforcement agents do not have to make *express* representations that the funds to be laundered were proceeds of specified unlawful activity. 'It is enough that the government prove that an enforcement officer or other authorized person made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds.'" *Id.* at 1331 (quoting *United States v. Kaufmann*, 985 F.2d 884, 893 (7th Cir. 1993)).

In this case, the evidence showed that a reasonable person in Ghali's circumstances would infer that the property involved was stolen property. Ghali's specific argument on this issue, therefore, fails. Aside from this argument, Ghali has explicitly conceded every element of the government's case on these counts.

11

We affirm Ghali's convictions on the nine counts of money laundering-sting.

## C. *The sentence enhancements*

Ghali also argues that the district court erred by enhancing his sentence for the use of minors (U.S.S.G. § 3B1.4) and obstruction of justice (§ 3C1.1). The district court's interpretation and application of the guidelines is reviewed *de novo* and its factual findings are reviewed for clear error. *United States v. Infante*, 404 F.3d 376, 393–94 (5th Cir. 2005).

There was evidence presented that Ghali's minor children were frequently included (albeit at a low level) in the Ghali organization's operations in furtherance of the conspiracy. For example, Ghali's children were used for unloading and storing stolen property and for counting out large amounts of cash to be paid for the stolen property.[9] We find no error in the district court's application of the § 3B1.4 enhancement.

---

[9]Ghali argues that he did not *personally* use or attempt to use any of his minor children to commit any of the offenses or to assist in avoiding detection of, or apprehension for, the offenses, and that his sentence should not be enhanced under § 3B1.4 simply because his co-conspirators so used the minor children. For support, Ghali cites to *United States v. Pojilenko*, 416 F.3d 243 (3d Cir. 2005), a case in which the court did indeed hold that that the § 3B1.4 enhancement is not appropriate based only on a co-conspirator's reasonably foreseeable use of a minor. The *Pojilenko* court acknowledged that its holding on this issue was in conflict with the Eleventh Circuit's opinion in *United States v. McClain*, 252 F.3d 1279 (11th Cir. 2001). We need not decide between the reasoning of *Pojilenko* and *McClain* in this case, however, because there is evidence that Ghali personally instructed Luai to use Ghali's minor son Amir to help unload the "stolen" property into a storage facility and that Amir did so help.

12

There was also evidence that Stephanie had received threats as a result of her decision to testify against Ghali and that, during the trial testimony of a confidential informant, a spectator in the courtroom made a throat-slashing gesture that frightened the witness. In the circumstances of this case, we cannot say it was clearly erroneous for the court to infer that Ghali was indirectly attempting to threaten or intimidate witnesses. Accordingly, we find no error in the district court's application of the § 3C1.1 enhancement.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

13