

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2007

# USA v. Melton

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4705

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Melton" (2007). *2007 Decisions.* Paper 1766.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1766

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4705
_____

UNITED STATES OF AMERICA

v.

JAMES MELTON,
a/k/a Jay-Mo,
a/k/a John Melton,
a/k/a Jason Melton
a/k/a David McGahae

James Melton,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(N.J. Criminal No. 00-cr-00384-7)
District Judge: Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
November 28, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
PRATTER,* <u>District Judge</u>

(Filed January 17, 2007 )
_____

OPINION OF THE COURT
_____

*Honorable Gene E.K. Pratter, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

PRATTER, District Judge

James Melton appeals for a second time his sentence following the jury verdict by which he was found guilty of one count of conspiracy to distribute and possess with intent to distribute more than 5 grams of cocaine base (crack) and more than 500 grams of cocaine, and five counts of knowing and intentional use of a communication facility to facilitate the distribution of cocaine and cocaine base.

In connection with his sentencing, Mr. Melton's base offense level was at 38 under U.S.S.G. § 2D1.1(c)(1) because, according to the trial testimony, Mr. Melton's conviction involved more than 1.5 kilograms of crack cocaine. Another three-level enhancement was prompted by his aggravating role in the offense (U.S.S.G. § 3B1.1), and a two-level enhancement for using a minor to commit a crime (U.S.S.G. § 3B1.4). As a result, Mr. Melton's total offense level was 43, making life imprisonment a Guideline option. However, the statutory maximum sentence for Mr. Melton's conviction under 18 U.S.C. § 841(b)(1)(B) was 40 years, the sentence which the District Court imposed.

On Mr. Melton's initial appeal, this Court affirmed the conviction but remanded to the District Court for re-sentencing in light of United States v. Booker, 543 U.S. 220 (2005). At his re-sentencing, Mr. Melton did not contest the factual findings in the Pre-Sentence Report, but opposed several enhancements and invoked 18 U.S.C. § 3553(a) factors for a reduced sentence.

2

The District Court[1] re-sentenced Mr. Melton to a 40-year sentence.

Mr. Melton now challenges the reasonableness of his sentence on the following grounds: (1) that his sentence violates the Sixth Amendment because it was based on facts neither admitted by him nor found by the jury; (2) the District Court did not consider sufficiently the § 3553(a) factors; and (3) the District Court did not consider "the significantly harsher treatment under the Sentencing Guidelines of crack cocaine as opposed to powder cocaine." This Court has jurisdiction pursuant to 18 U.S.C. § 3742. For the reasons discussed below, we will affirm the sentence.

We review claims of legal error, such as those raised by Mr. Melton concerning the possible implication of Booker, on a de novo basis. United States v. Pojilenko, 416 F.3d 243, 246 (3d Cir. 2005).

Mr. Melton contends that Booker precludes a judge from finding facts beyond those determined by a jury to impose a sentence in excess of that authorized by the jury's verdict under the Guidelines. Mr. Melton's argument is that this violates his Sixth Amendment right to a jury trial. Therefore, Mr. Melton asserts, the District Court's findings of drug quantity, aggravating role, and use of minors violated his right to a jury trial.

In Booker, the Supreme Court held that "[a]ny fact (other than a prior conviction)

---

[1] Judge Stephen Orlofsky, who initially imposed Mr. Melton's sentence, left the District Court in 2003 prior to this Court's remand order. Judge Robert Kugler presided over the re-sentencing.

which is necessary to support a sentence exceeding <u>the maximum authorized by the facts established by a plea of guilty or a jury verdict</u> must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 543 U.S. at 244 (emphasis added). The Court specified that "the constitutional safeguards that figure in our analysis concern . . . only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof." <u>Id.</u> at 242 (internal citations and quotation marks omitted). The remedy fashioned by the Court, however, was <u>not</u> a requirement that sentencing facts be found beyond a reasonable doubt by a jury.[2] Rather, the Court remedied the constitutional violation by making the Guidelines advisory. <u>Id.</u> at 259.[3] In sum, as we have previously stated, "district courts may fact-find to increase sentences beyond the Guidelines range provided they are within the statutory minimum and maximum dictated by the United States Code, take into account the relevant sentencing factors set out in 18 U.S.C. § 3553(a), and ultimately are 'reasonable.'" <u>United States v. Gunter</u>, 462 F.3d. 237, 243-44 (3d Cir. 2006).

---

[2] The Court reasoned that "[a] system that would require the jury, not the judge, to make the additional [drug quantity] finding is a system in which the prosecutor, not the judge, would control the sentence . . . because it is the prosecutor who would have to decide what drug amount to charge." <u>Booker</u>, 543 U.S. at 257.

[3] <u>See also</u> <u>Booker</u>, 543 U.S. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence <u>within a statutory range</u>.") (emphasis added).

4

Here, the sentencing judge did not impose a sentence in excess of that authorized by the statute under which Mr. Melton was convicted. Thus, Mr. Melton's 40-year sentence is not "in excess of that authorized by the jury's verdict." In other words, in this instance, as it happens, the jury found beyond a reasonable doubt the facts which determined the maximum possible sentence.

The jury found Mr. Melton guilty of conspiracy to distribute and possess with intent to distribute *more* than 5 grams of cocaine base. The District Court found that Mr. Melton was responsible for 1.5 kilograms of cocaine base, corresponding to a base offense level of 38.

The District Court's findings with respect to the quantity of drugs, the aggravating role (3-level enhancement), and the use of a minor (2-level enhancement), effectively increased Mr. Melton's sentence from a possible Guidelines maximum of 87 months to possible life imprisonment. Mr. Melton was sentenced to 40 years, meeting, but not exceeding, the statutory 40-year maximum sentence for violations of 18 U.S.C. § 841(b)(1)(B). While the impact of the District Court's conclusions is significant, with respect to the Sixth Amendment Booker is not implicated.

Turning to Mr. Melton's arguments concerning the District Court's finding of drug quantity, that finding is a factual finding which this Court reviews for clear error. United States v. Gibbs, 190 F.3d 188, 203 (3d Cir. 1999). With respect to the standard of proof, this Court and others have held, post-Booker, that such facts pertinent for an application

of the Sentencing Guidelines are to be found by a preponderance of the evidence.[4] United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006); United States v. Miller, 417 F.3d 358, 362-63 (3d Cir. 2005).

The District Court adopted the findings of the Pre-Sentence Report, which, in turn, was based on trial testimony establishing that Mr. Melton sold approximately 2 kilograms of crack cocaine per month over the course of 13 months. The Report thus recounted that "the amount of cocaine base, or 'crack cocaine,' attributable to James Melton's involvement in the offense is more than 1.5 kilograms." There is sufficient evidence to support a finding by a preponderance of the evidence that Mr. Melton possessed and distributed at least 1.5 kilograms of cocaine throughout the course of the conspiracy. Moreover, at the re-sentencing hearing, Mr. Melton did not contest the factual findings in the Pre-Sentence Report.

We next review the District Court's factual determinations concerning Mr. Melton's role in the offense and his use of a minor in connection with the offending conduct, which are likewise reviewed for clear error. United States v. Brown, 250 F.3d 811, 818 (3d Cir. 2001).

The Guidelines' aggravating role adjustment provides for a three-level increase in the offense level "[i]f the defendant was a manager or supervisor (but not an organizer or

---

[4] In any event, the District Court suggested that Mr. Melton was responsible for more than 1.5 kilograms of crack cocaine "under any standard of evidence."

leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Thus, while the criminal activity must involve five or more participants, the defendant need not have actually supervised five participants. See id. at n.2.

Mr. Melton claims that there were only two other participants in his offense, namely Earl Wynn and Vanessa Morton. However, in addition to Earl Wynn and Ms. Morton, the testimony at trial showed that Alonzo Wynn, Patrick Stewart, Kevin Daniels, Hondo, Tee, Dirt and Randy were also involved, making a group of at least nine.

Mr. Melton also claims that he was merely "an independent buyer and seller of cocaine," which does not warrant a role adjustment. However, the Pre-Sentence Report contains uncontested findings that Mr. Melton "worked in conjunction with Earl Wynn in finding sources of cocaine for the organization," and assisted in cooking the cocaine and bagging the crack cocaine. The Report also contains uncontested findings that Mr. Melton was responsible for the day-to-day operations of the 4 Street drug set, including supervision of other individuals who worked in "shifts."

Based on the testimony presented at Mr. Melton's trial and the information in the Report, which Mr. Melton did not contest, there is sufficient evidence to support a finding by a preponderance of the evidence that Mr. Melton participated in a supervisory or managerial role, making the three-level enhancement appropriate.

Under the Guidelines a two-level increase in offense level is imposed "[i]f the

7

defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4. In this case, the District Court primarily based its finding that Mr. Melton used at least one minor to commit the offense on the trial testimony of Earl Wynn, the alleged leader of the drug conspiracy in question. Mr. Melton claims this testimony was too vague, conjectural and unsubstantiated to support the finding.

Mr. Wynn specifically testified that "juveniles or younger guys" worked daytime shifts on the 4 Street set during the summer. Mr. Wynn also testified that one individual, Hondo, was currently "[a]bout 15 or 16," making him aged 13 or 14 at the time of the conspiracy, and another, Tee, "is a juvenile, I know that for sure." The District Court stated at sentencing: "There is no question in my mind also that there were juveniles employed in this conspiracy. At least two, maybe more juveniles employed in this."

A reviewing court generally owes "great deference" to the credibility determinations of the trial court. United States v. Brothers, 75 F.3d 845, 853 (3d Cir. 1996). To the extent the District Court chose to credit the testimony of Earl Wynn over that of Mr. Melton on this issue, there is no clear error, and there is evidence sufficient to support a finding by a preponderance of the evidence that Mr. Melton "used" at least one minor in the commission of the crime at issue.

The second issue Mr. Melton raises on appeal is whether the District Court properly considered all of the statutory sentencing factors and whether the sentence was

8

reasonable. Specifically, Mr. Melton contends that the District Court did not properly weigh and analyze two factors in particular, 18 U.S.C. § 3553(a)(2) and (6): the characteristics of the defendant and circumstances at the time of the offense, and sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

In Booker, the Supreme Court held that the standard of review for sentencing decisions was reasonableness. Booker, 543 U.S. at 261. As the party challenging the sentence, Mr. Melton bears the burden of establishing that the sentence is unreasonable. Cooper, 437 F.3d at 332 (citing United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005)).

To determine if the district court acted reasonably in imposing a sentence, the appellate court must first be satisfied the district court exercised its discretion by considering the relevant factors. Cooper, 437 F.3d at 329. The record must demonstrate that the trial court gave meaningful consideration to the § 3553(a) factors, but the court need not discuss and make findings as to each factor if the record makes clear the court took the factors into account. Id.

In addition to ensuring the trial court considered the section 3553(a) factors, the reviewing court must also "ascertain whether those factors were reasonably applied to the circumstances of the case." Id. In doing so, this Court applies "a deferential standard," since "the trial court is in the best position to determine the appropriate sentence in light

9

of the particular circumstances of the case." Id. Thus, the reviewing court evaluates only whether the sentencing court imposed the sentence "for reasons that are logical and consistent with the factors set forth in section 3553(a)." Id.

Mr. Melton contends that he "was brought up in a 'drug culture' . . . in which an older person involved in supervising him was tantamount to an older brother or father-figure." These circumstances, argues Mr. Melton, compromised his "free will and decision-making capacity," and should have been considered by the District Court. Mr. Melton also claims that the sentencing court failed to consider disparities between Mr. Melton's sentence and the sentences of his co-conspirators and other, similarly situated defendants.

The transcript of Mr. Melton's re-sentencing hearing shows that the District Court actively and actually considered all of the § 3553(a) factors, including the nature and circumstances of the offense, Mr. Melton's history and characteristics, and the sentences of Mr. Melton's co-conspirators. All of Mr. Melton's co-defendants and defendants in related cases received less than 18 years of incarceration, far less than the sentence imposed on Mr. Melton. The District Court, however, stated that it imposed a 40-year sentence on Mr. Melton in order "to reflect the seriousness of the offense and to promote respect for the law and provide just punishment for the offense." The District Court noted that the need "to protect the public from further crimes of this defendant" was "the most important factor in [drug conspiracy] cases" and, while acknowledging

10

Mr. Melton's participation in prison educational programs, stated that this was not "a terribly important factor." As the Government states in its brief, "Judge Kugler viewed Melton not as a victim of the drug culture, but rather as a perpetrator of it." The sentencing court also noted that the other co-defendants in the related cases had cooperated with the government, while Mr. Melton certainly did not.

Mr. Melton contends that the District Court should have taken into account the harsher treatment of crack cocaine as opposed to powder cocaine under the Sentencing Guidelines. Mr. Melton's Base Offense Level was 14 points higher because the crime involved crack cocaine rather than powder cocaine. Accordingly, argues Mr. Melton, his sentence is unreasonable because there is no reasonable basis for this disparity. This Court recently held that district courts must treat the crack cocaine Sentencing Guideline as advisory rather than mandatory, and that district courts had discretion to sentence at less than the minimum Guidelines range, although not at less than the minimum statutory penalty. Gunter, 462 F.3d at 248-49.[5]

Here, the District Court recognized the risk of a disparity but refused to reduce Mr. Melton's sentence based on this differential because it found that "crack cocaine is an incredibly serious crime and needs to be punished accordingly." As this Court noted in Gunter, "the District Court is under no obligation to impose a sentence below the

_____

[5] Gunter provides a thorough summary of the policy history and debate, and authority on this issue.

11

applicable Guidelines range solely on the basis of the crack/powder cocaine differential."

Id. at 249. Here, the District Court did not err as a matter of law. Unlike the sentencing court in Gunter, the District Court sentencing Mr. Melton chose not to take the discrepancy into account as an exercise of its discretion, rather than as a result of an erroneous belief as was the case in Gunter that the Guidelines range was mandatory. We also conclude that the District Court did not abuse its discretion in refusing to decrease Mr. Melton's sentence on this basis.

Therefore, we will AFFIRM the sentencing order.