[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10873
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00443-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY KENNETH TABER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(August 29, 2007)**

Before BIRCH, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Jerry Kenneth Taber appeals his 100-month sentence for: (1) theft of six firearms from a federally licensed firearms dealer, in violation of 18 U.S.C. §§ 922(u), 924(i), and 2; (2) possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2; (3) possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), and 2; and (4) possession of firearms with obliterated or removed manufacturers' serial numbers, in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B), and 2. On appeal, Taber argues that the district court erroneously applied a two-level adjustment to his offense level, pursuant to U.S.S.G. § 3B1.4, for his use of a minor in the commission of the offenses. Contrary to Taber's argument, we hold that the district court correctly applied the adjustment because Taber committed three affirmative acts to involve the minor in the offense. Thus, for the reasons discussed more fully below, we affirm.

The basic facts are undisputed. On September 8, 2006, Gateswood Sports, Inc. ("Gateswood"), a federal firearms licensee, was burglarized and suffered a loss of six firearms and a small amount of cash. Officers determined that a minor was a suspect in the burglary. During an interview with the officers, the minor admitted that he committed the burglary at Gateswood and that Taber was with him during the burglary. According to the minor, Taber pushed out a window-mounted air

2

conditioner and the minor, with Taber's assistance, entered Gateswood through the window. The minor placed six firearms and cash into a backpack and exited Gateswood through the same window. As the minor and Taber were leaving Gateswood, they observed police in the area, so they hid the backpack in nearby bushes. The minor and Taber later retrieved the backpack and drove to the house of Robert Shaffer, who was a friend of the minor. The serial numbers were obliterated from the firearms at Shaffer's house. The minor and Taber each kept one of the firearms and the remaining firearms were left at Shaffer's house. Thereafter, the minor and Shaffer traded one of the firearms to a third party in exchange for marijuana.

The officers later arrested and interviewed Taber. According to Taber, the minor had told Taber that he knew of a place where they could steal firearms and of individuals who would buy the firearms from them. Taber drove himself and the minor to Gateswood. The minor surveyed the area and then informed Taber that they could accomplish the theft at that time. Taber next observed the minor entering Gateswood through a window "once the air conditioner unit was pushed through." Taber confirmed that he and the minor drove the firearms to Shaffer's house, but he denied that he obliterated the serial numbers.

At sentencing, the district court assigned a base offense level of 20, pursuant

3

to U.S.S.G. § 2K2.1(a)(4)(A). In addition to increases in the offense level for specific offense characteristics, the court included a two-level enhancement for Taber's use of a minor in committing the offenses, pursuant to U.S.S.G. § 3B1.4. Taber's total adjusted offense level was 27 and his criminal history category was IV, thereby resulting in a guideline range of 100 to 120 months' imprisonment.[1]

Taber objected to the § 3B1.4 enhancement. In overruling Taber's objection, the district court found that Taber had engaged in affirmative acts to involve the minor, namely: "[1] actually driving to Gateswood Sports, driving both of them there, [2] the act of actually, I believe, pushing the air conditioning unit through the window so that [the minor] could enter the store and [3] then acting as a lookout while [the minor] was in the store." The court thus found that Taber's affirmative acts to involve the minor were sufficient to support the application of the § 3B1.4 enhancement. The court thereafter imposed a low-end sentence of 100 months' imprisonment.

On appeal, Taber argues that the district court erred in applying the § 3B1.4 enhancement to his offense level for two reasons, specifically, that the

---

[1]Under the guidelines, an offense level of 27 and a criminal history category of IV yields a guideline range of 100-125 months' imprisonment. (See Nov. 1, 2005, Guidelines Manual at Sentencing Table). However, because the statutory maximum term of imprisonment for Taber's convictions on counts 1 through 3 was 120 months' imprisonment, Taber's guideline range became 100 to 120 months. (See 18 U.S.C. § 924(a)(2)).

enhancement is not applicable where: (1) the defendant did not commit any of the acts required by Application Note 1 of § 3B1.4; and (2) the minor was more culpable than the adult defendant. Taber asserts that the language of § 3B1.4, along with the definition of "use or attempted use," as defined in Application Note 1, requires the defendant to do more than participate as an equal partner in jointly undertaken activity with the minor. He maintains that the three acts that the district court found established the requisite conduct on Taber's part were not the type of "directional" acts that the guideline enhancement requires.

We review the district court's interpretation of the sentencing guidelines de novo and review its factual findings for clear error. United States v. McClain, 252 F.3d 1279, 1284 (11th Cir. 2001).

Section 3B1.4 falls under Part B of Chapter Three of the sentencing guidelines. In Part B, entitled "Role in the Offense," the guidelines indicate that adjustments set forth in that part are "based upon the role the defendant played in committing the offense." U.S.S.G. Chapter Three, Part B, Introductory Commentary. Pursuant to § 3B1.4, a defendant's offense level must be increased by two levels "if [he] used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4. The commentary to § 3B1.4 provides that

5

"'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."  U.S.S.G. § 3B1.4, comment. (n.1); see also Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

As both parties concede, McClain is our sole published authority in which a district court's application of § 3B1.4 was directly at issue.  See McClain, 252 F.3d at 1284.  In McClain, two codefendants were convicted of conspiracy to commit bank fraud, which they committed by recruiting minors to cash counterfeit checks at various banks.  Id. at 1281-83.  Both defendants received a two-level enhancement pursuant to § 3B1.4 for using a minor to commit their offense.  Id. at 1283.  McClain argued on appeal that the enhancement was not applicable to him because his codefendant actually solicited the minor for the crime, while McClain merely worked with his codefendant in the overall scheme.  Id. at 1284. Thus, at issue in McClain was "whether section 3B1.4 applie[d] to the jointly undertaken criminal activity of co-conspirators," but not whether mere partnering with a minor was sufficient for the § 3B1.4 adjustment because it was undisputed

6

that McClain's co-conspirator had recruited a minor.  Id. at 1287, 1287 n.16.

In analyzing whether the district court correctly applied § 3B1.4 in

McClain's case, we first looked to the statute enabling § 3B1.4, which is as

follows:

> SEC. 140008. SOLICITATION OF MINOR TO COMMIT CRIME
> (a) Directive to Sentencing Commission -
> (1) The United States Sentencing Commission shall promulgate
> guidelines or amend existing guidelines to provide that a defendant . .
> . who has been convicted of an offense shall receive an appropriate
> sentence enhancement if the defendant involved a minor in the
> commission of the offense.
> (2) The Commission shall provide that the guideline enhancement . . .
> shall apply for any offense in relation to which the defendant has
> solicited, procured, recruited, counseled, encouraged, trained,
> directed, commanded, intimidated, or otherwise used or attempted to
> use any person less than 18 years of age with the intent that the minor
> would commit a Federal offense.

McClain, 252 F.3d at 1284-85 (quoting Violent Crime Control and Law

Enforcement Act of 1994, Pub.L. No. 103-322, § 140008(a), 108 Stat. 1796, 2033).

We held that § 3B1.4 was "applicable to participants in a jointly undertaken

criminal enterprise in which use of a minor was reasonably foreseeable."  McClain,

252 F.3d at 1288.  Therefore, we affirmed the district court's application of

§ 3B1.4 in McClain's case because, given McClain's participation and leadership

role in the overall counterfeit check-cashing scheme, it was reasonably foreseeable

to McClain that one of his co-conspirators would recruit a minor for use in the

7

scheme.  Id.  Because we did not have the opportunity to discuss the definition and scope of the terms "use" or "attempted to use" as they are employed in § 3B1.4, it remains an open question in this circuit.

However, our sister circuits provide persuasive authority on the question, all holding that a § 3B1.4 adjustment applies only where the defendant takes some affirmative act to involve the minor in the criminal activity.  See United States v. Molina, 469 F.3d 408, 415 (5th Cir. 2006) (indicating that the minor's mere presence during unlawful activity was not sufficient to warrant a § 3B1.4 adjustment); United States v. Pojilenko, 416 F.3d 243, 247 (3d Cir. 2005) (agreeing that "some affirmative act is necessary beyond mere partnership in order to implicate § 3B1.4"); United States v. Paine, 407 F.3d 958, 965 (8th Cir. 2005) (concluding that the language of § 3B1.4, Application Note 1 "requires the defendant to affirmatively involve or incorporate a minor into the commission of the offense"); United States v. Suitor, 253 F.3d 1206, 1210 (10th Cir. 2001) (holding that § 3B1.4 is applicable only where the evidence demonstrates more than the defendant's involvement in a conspiracy with a minor); United States v. Parker, 241 F.3d 1114, 1120 (9th Cir. 2001) (reasoning that a defendant must act affirmatively to involve a minor in the crime to warrant a § 3B1.4 adjustment, as opposed to merely acting as the minor's partner); United States v. Ramsey, 237

8

F.3d 853, 860 (7th Cir. 2001) (requiring that the defendant "take affirmative acts to involve the minor in the commission of the offense"); United States v. Butler, 207 F.3d 839, 848 (6th Cir. 2000) (determining that a defendant "must do more than simply participate in a crime with a minor" to warrant a § 3B1.4 adjustment). We join our sister circuits and hold that a § 3B1.4 adjustment is warranted only where the defendant takes some affirmative step to involve a minor in the commission of the criminal activity.

Despite the circuits' agreement that there must be some affirmative act to involve the minor, there is a split over what type of "affirmative act" will warrant the adjustment. Compare Ramsey, 237 F.3d at 859 (holding that the "affirmative act" requirement can be met when the defendant is a mere partner with the minor), with Pojilenko, 416 F.3d at 247 (concluding that mere partnership is insufficient), Parker, 241 F.3d at 1120 (holding that a defendant's participation in an armed bank robbery with a minor does not warrant the adjustment), and Butler, 207 F.3d 839, 848-49 (requiring more than equal partnership with the minor in committing the offense). However, we need not address this split here because, contrary to Taber's argument on appeal, the district court found that Taber committed three affirmative acts to involve the minor in the criminal activity and, pursuant to the language of § 3B1.4, Application Note 1 and the relevant case law, those acts were

9

sufficient to warrant the adjustment.

Specifically, the district court determined that Taber had affirmatively involved the minor in three ways: (1) driving himself and the minor to the robbery location; (2) pushing in the air-conditioning unit at Gateswood, which allowed the minor to enter the building through the hole in the window; and (3) acting as a look-out while the minor was inside Gateswood. Taber admits on appeal that he does not challenge the district court's particular factual findings. According to § 3B1.4, Application Note 1, the terms "use" or "attempted to use" include "encouraging." U.S.S.G. § 3B1.4, comment. (n.1). The term "encourage" is defined as, "[t]o instigate; to incite to action; to embolden; to help." Black's Law Dictionary 568 (8th ed. 2004). Under that definition, and our requirement that the defendant take some affirmative act to involve the minor, Taber's three acts did encourage and help the minor to commit the crime of stealing the firearms. There is nothing in the case law or the sentencing guidelines to suggest that, where, as here, the minor devised the criminal scheme at the outset, the adult defendant's conduct cannot warrant a § 3B1.4 adjustment. Thus, even though the record indicates that the minor invited Taber to participate in the theft of the firearms, Taber's subsequent affirmative acts involved the minor in the offense, such that the district court's application of the § 3B1.4 adjustment was warranted.

For the foregoing reasons, Taber's sentence is **AFFIRMED.**