[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-17026
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 14, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00061-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TREMAIN HAMILTON,
a.k.a. TUN,
a.k.a. TI,
RODRICK SLACK,
a.k.a. RAT,

Defendants-Appellants.

_____

No. 08-17160
Non-Argument Calendar
_____

D. C. Docket No. 08-00061-CR-3-LAC

UNITED STATES OF AMERICA,

versus

ADRIAN CAWTHON,
a.k.a. Rick,
a.k.a. Little Ricky,
a.k.a. Little Shitty,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____
(December 14, 2009)

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Tremain Hamilton, Rodrick Slack, and Adrian Cawthon were found guilty by a jury of conspiracy to distribute and to possess with intent to distribute at least 5 kilograms of cocaine and at least 50 grams of cocaine base (crack), in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(ii)–(iii).  According to the evidence presented at trial, for several years the defendants had operated a drug ring in and around Milton, Florida, bringing in powder cocaine from out of state and "cooking" it into crack for local distribution and sale.  Of about twenty people

2

originally indicted, only Hamilton, Slack, and Cawthon chose to go to trial; the rest pleaded guilty and most of them testified for the government. Upon conviction Hamilton received 420 months in prison; Slack got 444 months and a $1,770 fine; Cawthon, with multiple prior felony drug convictions, got a mandatory life sentence.

The three defendants raise four separate issues on appeal. Hamilton challenges his sentence on two grounds: the amount of drugs used to calculate his offense level under the guidelines, and the two-level enhancement he received for using a minor. Slack appeals his fine as a violation of his Fifth Amendment right against self-incrimination. Cawthon challenges the sufficiency of the evidence supporting his conviction. We affirm Hamilton's sentence, Slack's fine, and Cawthon's conviction.

## I. Amount of Drugs Attributed to Hamilton

Hamilton argues that he should only have been held responsible for 560 grams of crack cocaine, instead of the 4.5 kilograms that the district court attributed to him at sentencing. Using the lower number would have reduced his base offense level by four, potentially knocking between 10 and 15 years off the 35-year sentence he received. Hamilton says that the court should have adopted the findings of the presentence investigation (PSI), which made a conservative

estimate of 560 grams based on Steven Pinkney's trial testimony that he had bought crack in increments of 7 to 14 grams directly from Hamilton on at least a weekly basis over a twenty-month period. Hamilton notes that no other witness was able to tie him to a specific quantity of drugs.

The government argues that Hamilton, as a co-conspirator, should also be held responsible for the much larger quantities of cocaine and crack attributed to Cawthon and Slack. The district court agreed with the government and found Hamilton responsible for "significantly beyond" 4.5 kilograms, the threshold for the highest offense level, based both on his own activities and on his participation in and knowledge of the conspiracy.

The district court's determination of drug quantity for sentencing purposes is reviewed for clear error. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). In order to calculate the base offense level, the court must determine the quantity of illegal drugs properly attributable to the defendant. United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996). If no drugs are seized, or if the amount seized does not adequately reflect the scale of the offense, the court may estimate a quantity from evidence of the "average frequency and amount" of the defendant's drug sales over time. Id.; see United States Sentencing Guidelines § 2D1.1 cmt. n.12 (Nov. 2009). The defendant's sentence may be based on "fair,

accurate, and conservative estimates" of drug quantity, but not on mere speculation. United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998). It is the government's burden to establish the quantity of drugs by a preponderance of the evidence. United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). However, the court may rely on undisputed statements in the PSI. United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999).

A member of a drug conspiracy is liable not only for his own acts, but also for the acts of others "in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). This rule applies to drug quantity determinations. See U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.2 ("[T]he defendant is accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook."). In such cases, the court must make individualized findings as to each defendant's scope of involvement, and then determine the drug quantities "reasonably foreseeable" to that defendant given his level of participation. Ismond, 993 F.3d at 1499. If the court does not make individualized findings, the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to the defendant. Id.

5

Ample evidence at trial showed that over the several years of its operation the drug ring handled amounts of crack cocaine well in excess of the 4.5 kilogram threshold. Christopher Watson testified that he accompanied Cawthon and Slack on numerous out-of-state trips to buy powder cocaine for sale or conversion into crack, that they would obtain three or four kilograms each time, and that Hamilton was one of their regular distributors. Byron Washington testified that on a "weekly" basis during late 2005 and 2006 he would supply Cawthon's group with quantities of cocaine ranging from quarter-kilograms to multiple kilograms. The Probation Office estimated that the conspirators had collectively cooked and distributed over 38 kilograms of crack.[1] Hamilton did not object to this calculation, so he is deemed to have admitted it for sentencing purposes. See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

Five other longtime associates of Hamilton testified that he was heavily involved in the drug business with Cawthon and Slack, and that the trio worked together in processing and distributing crack. Three of those witnesses had

---

[1] According to DEA statistics cited in Hamilton's PSI, powder cocaine retains between 80% and 90% of its weight when "cooked" into crack, depending on the skill of the cook. The Probation Office assumed that only half the powder purchased by Cawthon and Slack was converted to crack, and used the more conservative 80% conversion ratio.

purchased cocaine or crack directly from Hamilton. Katrisa Thomas, who lent her

own kitchen for the group's "cooking" operations, testified at Hamilton's

sentencing that he had been involved in the drug trade with Cawthon and Slack

since his school days, and that the three were "always together." Based on this

evidence, the district court did not clearly err in finding that Hamilton could

reasonably have foreseen that the criminal enterprise he joined would be

responsible for more than 4.5 kilograms of crack cocaine.

## II. Hamilton's Enhancement for Using a Minor

Hamilton also argues that the district court erred when it applied a two-level

sentence enhancement for using a minor to commit the crime. The enhancement

was based on evidence that Hamilton had distributed drugs through a young

co–defendant, Jamel Shields, who turned 18 years old in February 2007 and thus

would have been underage during approximately the first three years of the

conspiracy charged in the indictment.[2] Hamilton does not dispute the substance of

his association with Shields, only its timing. He asserts that because the record

does not show exactly when he began distributing crack through the younger man,

---

[2] Shields continued to participate in the conspiracy for more than a year after he turned 18, and he was prosecuted as an adult. He pleaded guilty and was sentenced to 168 months in prison. United States v. Shields, 329 Fed. Appx. 903 (11th Cir. 2009) (per curiam).

7

there was no evidence to support a finding that he did so before February 2007 while Shields was still a minor.

We review for clear error a district court's factual findings under the sentencing guidelines. United States v. McClain, 252 F.3d 1279, 1284 (11th Cir. 2001). When a defendant challenges a factual basis of his sentence, the government must establish the disputed fact by a preponderance of the evidence. United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997).

The guidelines impose a two-level sentencing enhancement on a defendant who used or attempted to use a person less than 18 years of age to commit the offense. U.S.S.G. § 3B1.4; McClain, 252 F.3d at 1285. The phrase "used or attempted to use" includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4 cmt. n.1. We have held that the § 3B1.4 enhancement only applies if the defendant took some "affirmative step" to involve the minor in the commission of the crime. United States v. Taber, 497 F.3d 1177, 1181 (11th Cir. 2007) (per curiam). However, in a joint criminal enterprise, "any defendants who could have reasonably foreseen the use of a minor . . . are culpable under the plain language of [U.S.S.G.] sections 3B1.4 and 1B1.3(a)(1)(B)." McClain, 252 F.3d at 1288.

Evidence from two witnesses established that Shields had been dealing drugs for the conspirators as early as 2006, when he was still a minor. Avarah Williams, who testified that Shields sold crack for the group, could only have observed Shields' involvement before his own arrest and incarceration in March 2006. Byron Washington likewise testified that before his own imprisonment in November 2006, he had seen Shields accompanying Cawthon on trips to buy cocaine from him. Taken together, this evidence supports the conclusion that the members of the conspiracy used Shields to deal drugs while he was still a minor, and that this use was foreseeable to Hamilton. The district court did not clearly err in applying the sentence enhancement.

### III. Slack's Fine

Slack argues that the district court erred by imposing a fine to compensate the government for some of its costs of prosecution. At sentencing, the government complained that because Slack had refused to stipulate to lab reports on the seized drugs, it had been forced to fly in a chemist and keep her on standby as a potential witness for an entire day of the trial. At the government's request, the court fined Slack $1,770 to compensate for this expense. Slack argues that by imposing the fine, the court unconstitutionally penalized him for exercising his Fifth Amendment right against self-incrimination. He also argues that because the

9

government did not actually need the witness and never called her to testify, it was error for the court to use this expense as the basis for a fine.

Because Slack did not raise his constitutional argument before the district court, we review that claim for plain error only. See United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (sentencing argument raised for first time on appeal is reviewed for plain error). Plain error exists only where (1) there is an error; (2) the error is plain or obvious; and (3) the error affects the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). We have held that "an error cannot meet the 'plain' requirement of the plain error rule if it is not clear under current law." United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006) (citations and quotation marks omitted). "When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." Id. (quotation omitted).

In United States v. Palmer, 809 F.2d 1504, 1507–08 (11th Cir. 1987), we rejected a defendant's argument that a federal statute imposing costs of prosecution on a convicted defendant unconstitutionally burdened his exercise of his right to a jury trial. We noted that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." Id. at

10

1507 (quoting Corbitt v. New Jersey, 439 U.S. 212, 218, 99 S. Ct. 492, 497 (1978)). We held that recouping prosecution costs met "legitimate governmental ends" of recovering government expenses and imposing additional punishment, and that the statute "achieved these objectives without needlessly chilling the exercise of constitutional rights." Id. at 1507–08. In light of Palmer, and because Slack has failed to present any binding precedent stating that a court may not consider the costs of prosecution in determining an appropriate fine, we cannot conclude that the district court plainly erred by imposing a fine to reimburse the government for the travel expenses of its witness.

Slack also objects to the fine, as he did at sentencing, on the basis that the government's expenses were unnecessary because the witness never testified. The government responded that it needed to have the witness available at trial, and it incurred travel expenses regardless of whether she actually testified.

A district court's determination of an appropriate fine is reviewed for clear error. United States v. Lombardo, 35 F.3d 526, 527 (11th Cir. 1994) (per curiam). The sentencing guidelines require the imposition of a fine in all cases, unless the defendant establishes that he is currently unable to pay a fine and is not likely to become able to pay one in the future. U.S.S.G. § 5E1.2(a). In determining the amount of the fine, the sentencing court must consider the following factors: (1)

the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment and adequate deterrence; (2) the defendant's ability to pay in light of earning capacity and financial resources; (3) the burden on the defendant and his dependents; (4) whether restitution is ordered; (5) collateral consequences of conviction, including the defendant's civil obligations; (6) previous fines for similar offenses; (7) the government's expected costs for imprisonment and supervision; and (8) "any other pertinent equitable considerations." U.S.S.G. § 5E1.2(d).

For Slack's offense, the guidelines recommended a minimum fine of $25,000, U.S.S.G. § 5E1.2(c), and the statute allowed a maximum fine of $4 million, 21 U.S.C. § 841(b)(1)(A). The district court adopted the PSI's finding that although Slack could not pay a fine in that range, he did have the ability to pay a "modest" fine. Slack did not object to the PSI's finding, so he has admitted it for sentencing purposes. See Wade, 458 F.3d 1277. Because the $1,770 fine was well below the recommended guidelines range and was not excessive in relation to Slack's ability to pay, the district court did not clearly err in determining it.

## IV. Sufficiency of Evidence for Cawthon's Conviction

Cawthon argues that the government failed to prove beyond a reasonable doubt that he was involved in a conspiracy to distribute or possess with intent to

12

distribute controlled substances.  He contends that no direct evidence linked him to the conspiracy, because the government never made a controlled buy directly from him and never found any cocaine or crack in his possession.  Cawthon also notes that he was in custody for two thirds of the time frame specified in the indictment for the conspiracy, and that the witnesses who testified to his own involvement did not give exact dates.  Furthermore, nearly all of the evidence against him came from convicted felons testifying as part of plea deals and hoping to limit or reduce their own sentences.  For all of these reasons, he says, the evidence was insufficient to prove his guilt.

We review a sufficiency challenge de novo, viewing the evidence in the light most favorable to the government.  United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).  We draw all reasonable inferences in the government's favor, and accept credibility choices made by the factfinder.  Id.  We must affirm a conviction unless there is no reasonable construction of the evidence under which the jury could have found the defendant guilty beyond a reasonable doubt.  United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

An "unbroken stream of precedent" in this Circuit holds that "the uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt."  Craig v. Singletary, 127 F.3d 1030, 1044–45

13

(11th Cir. 1997) (citing cases).  Determinations of the credibility of witnesses fall within the exclusive province of the jury, and may not be revisited unless the testimony is "incredible as a matter of law."  United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997).  For testimony to be incredible as a matter of law, it must be "unbelievable on its face," consisting of events that the witness could not possibly have observed or that "could not have occurred under the laws of nature."  Id. (internal quotation marks and citation omitted).  Self-serving motives do not make a witness's testimony incredible.  See id.  A judgment of acquittal is not required simply because the government's case relies on "an array of scoundrels, liars and brigands."  United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985) (internal quotation marks and citation omitted).

To convict Cawthon under 21 U.S.C. § 841(a)(1), the government had to prove beyond a reasonable doubt that he (1) knowingly (2) possessed cocaine and crack (3) with the intent to distribute it.  See United States v. Faust, 456 F.3d 1342, 1345 (11th Cir. 2006).  To convict him of conspiracy under 21 U.S.C. § 846, the government had to establish beyond a reasonable doubt that (1) an illegal agreement existed; (2) Cawthon knew of it; and (3) Cawthon knowingly and voluntarily participated in the agreement.  See United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).  Direct evidence is not required to prove

14

participation in a conspiracy; a "common purpose and plan" may be inferred from circumstances. Id. Knowing participation may be established through proof of "acts committed by the defendant which furthered the purpose of the conspiracy." United States v. Bain, 736 F.2d 1480, 1485 (11th Cir. 1984).

Numerous witnesses testified to the purchase, processing, distribution, and sale of multiple kilograms of cocaine and crack by Cawthon and his co-defendants. Several of them directly observed Cawthon himself engaging in these activities. Cawthon was out of jail for about a year and a half of the period charged in the indictment for the conspiracy, and nothing suggests that the witnesses could not have observed him during this time. The first thing the jury heard from each of these witnesses was their admissions that they themselves had been convicted of drug crimes and hoped that their testimony would earn them a reduced sentence. Their testimony was not "incredible as a matter of law," and the jury chose to believe it. Furthermore, not all of the evidence against Cawthon came from accomplices. A Texas police officer testified that during a traffic stop he had found Cawthon, Slack, and Christopher Watson with a loaded gun and over $62,000 in cash in their car, corroborating Watson's testimony that they were on their way to Dallas to buy a large quantity of cocaine. Given all of this evidence, a

15

rational trier of fact could have found beyond a reasonable doubt that Cawthon

participated in the conspiracy for which he was convicted.

**AFFIRMED.**